

# SUPREME COURT OF ARKANSAS.
### No. CR–16–474

| | | |
|---|---|---|
| RICHARD W. GREEN | | **Opinion Delivered** November 10, 2016 |
| | APPELLANT | |
| V. | | PRO SE MOTION FOR USE OF COPY OF RECORD AND TRANSCRIPT AND FOR EXTENSION OF TIME TO FILE BRIEF [HOT SPRING COUNTY CIRCUIT COURT, NO. 30CR-79-2] |
| STATE OF ARKANSAS | | |
| | APPELLEE | |
| | | <u>APPEAL DISMISSED; MOTION MOOT</u>. |

**KAREN R. BAKER, Associate Justice**

On April 4, 1979, Richard W. Green pleaded guilty to murder in the first degree and was sentenced to imprisonment for the rest of his "natural life." Green thereafter sought postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1 (1979), claiming his plea of guilty in 1979 was not voluntary because he thought he would serve a seven-year sentence. This court affirmed the denial of relief, finding that Green knew he could be sentenced to life imprisonment at the time of his plea and that, other than the agreement to reduce the charge against him from capital to first-degree murder, no promises had been made to him in exchange for his plea. *Green v. State*, 297 Ark. 49, 50–51, 759 S.W.2d 211, 211–12 (1988). On June 19, 2014, Green filed in the trial court a petition for writ of error coram nobis or motion to correct clerical error or mistake in judgment-and-commitment order. The trial court denied relief, and Green has lodged an appeal in this

court from that denial. Now before this court is Green's pro se motion for use of record and transcript and for extension of brief time.

When it is clear from the record that the appellant cannot prevail if an appeal of an order that denied postconviction relief were permitted to go forward, we dismiss the appeal. *Wheeler v. State*, 2015 Ark. 233, 463 S.W.3d 678 (per curiam); *see also Justus v. State*, 2012 Ark. 91. As it is clear from the record that Green could not prevail on appeal, the appeal is dismissed. The dismissal of the appeal renders the motion moot.

A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram-nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id*. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id*. A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38.

Green raised the following claims below in his petition for writ of error coram nobis: that the trial court made false statements regarding his sentence during the plea hearing which made his sentence illegal; that trial counsel was ineffective for allowing the trial court to falsely apprise him in this manner; that the penitentiary commitment order was invalid for lack of the judge's signature and the clerk's seal; that the commitment order did not state certain language Green deemed pertinent; that the court's failure to state a minimum sentencing range during his plea hearing entitled him to issuance of the writ; that his plea was either coerced because he was not paroled after seven years' imprisonment or trial counsel was ineffective for their failure to ensure he was paroled after serving seven year's imprisonment on his life sentence; and that he found out in 2011 that fingerprints on the murder weapon belonged to Glen Briner. In his petition, Green stated that he did not bring his claims earlier because he has "had at least 20 major surgeries since 2009" and that he was "unaware of the illegal judgment order until 1996[.]" Citing *Newman*, 2009 Ark. 539, 354 S.W.3d 61, he claimed "this [wa]s the first opportunity he has had to present his case."

Although there is no specific time limit for seeking a writ of error coram nobis, due diligence is required in making an application for relief. *Philyaw v. State*, 2014 Ark. 130, at 6 (per curiam). Due diligence requires that (1) the defendant be unaware of the fact at the time of trial; (2) the defendant could not have, in the exercise of due diligence, presented the fact at trial; and (3) the defendant after discovering the fact, did not delaying in bringing the petition. *Id*. at 6–7 (*citing McClure v. State*, 2013 Ark. 306 (per curiam)). The requirements are a sequence of events, each of which a petitioner much show to prove due diligence. *Id*.

It has been over thirty years since Green's guilty plea. Even if Green were unaware of any alleged illegality until 1996, that is a period of over twenty years after his conviction, and, even presuming any merit to his assertion that he could not raise the claims until after 2009, it purportedly took Green over five years to raise his claims. However, Green's own claims are belied by the fact that in 1995 Green filed a petition for writ of habeas corpus seeking to have his judgment vacated on the ground that the statute governing the possible sentences for murder in the first degree provided for "life imprisonment" but not imprisonment for the rest of one's "natural life"—a claim he argued he was unaware of until 1996.[1] Moreover, the majority of his claims regarding any alleged illegality with his guilty plea, plea hearing, or commitment order could have been raised long before now. Green has not established that he exercised due diligence in bringing forth his claims, and his petition would be subject to denial on that basis alone. *Philyaw*, 2014 Ark. 130, at 7.

Even assuming Green had been diligent in bringing his claims, while Green attempted to couch many of his claims in terms of a coerced guilty plea, which would provide a basis for relief in a coram-nobis proceeding, the actual bases for these claims are ineffective assistance of counsel and trial error. *See Biggs v. State*, 2016 Ark. 125, at 3, 487 S.W.3d 363, at 365-66 (per curiam); *see also Wilburn v. State*, 2014 Ark. 394, 441 S.W.3d 29 (per curiam) (Appellant did not contend the plea was given as the result of fear, duress, or threats of mob violence, but rather, the crux of his claim was that it was involuntarily

---

[1]The petition was denied by the trial court, and, after he failed to perfect the appeal, this court denied Green's request to proceed with a belated appeal of the order of denial. *Green v. State*, CR-96-572 (Ark. July 8, 1996) (unpublished per curiam).

given due to ineffective assistance of counsel and failure of the trial court to properly advise him of the charges and his rights.).  This court has repeatedly held that ineffective-assistance-of-counsel and trial-error claims are not cognizable in error-coram-nobis proceedings. W*hite v. State*, 2015 Ark. 151, at 4, 460 S.W.3d 285, 288.  Error-coram-nobis proceedings are not a substitute for proceedings under Rule 37.1 to challenge the validity of a guilty plea—which encompasses most of Green's allegations in his petition for writ of error coram nobis—nor are the two proceedings interchangeable.  *Wilburn*, 2014 Ark. 394, at 4, 441 S.W.3d at 32.  Green had already sought and appealed the denial of Rule 37.1 relief, *see Green*, 297 Ark. 49, 459 S.W.2d 11, and any attempt to file a subsequent petition would have been dismissed in accordance with Rule 37.2(b), which precludes the filing of a subsequent petition.  *See Williams v. State*, 273 Ark. 315, 316, 619 S.W.2d 628, 629 (1981) (per curiam) (Where allegations of the original petition were conclusory, subsequent Rule 37 petitions were allowed and decided on their merits; however, the practice resulted in inconsistency in the treatment of subsequent petitions, so the court no longer considered subsequent petitions unless the original was dismissed specifically without prejudice.).

Green claimed that the term for the "rest of his natural life" was a sentence outside the sentencing range granted by the statute for his offense, which was life.[2]  There is a provision in Arkansas Code Annotated section 16-90-111 (Repl. 2006) that allows the trial court to correct an illegal sentence at any time because a claim that a sentence is illegal

---

[2]In 1979, first-degree murder was a class A felony.  *See* Ark. Stat. Ann. § 41–1502(3) (Repl. 1977).  The sentence for first-degree murder, a class A felony, was not less than five years nor more than fifty years, or life. *See* Ark. Stat. Ann. § 41–901(a) (Repl. 1977).

presents an issue of subject-matter jurisdiction. *Burgie v. State*, 2016 Ark. 144, at 1–2 (per curiam), *reh'g denied* (May 5, 2016). While the time limitations on filing a petition under section 16-90-111(b)(1) on the grounds that the sentence was imposed in an illegal manner were superseded by Arkansas Rules of Criminal Procedure 37.2(c), the portion of section 16-90-111 that provides a means to challenge a sentence at any time on the ground that the sentence is illegal on its face remains in effect. *Halfacre v. State*, 2015 Ark. 105, 460 S.W.3d 282 (per curiam). A sentence is illegal on its face when it exceeds the statutory maximum for the offense for which the defendant was convicted. *Atkins v. State*, 2014 Ark. 393, 441 S.W.3d 19 (per curiam).

Contrary to Green's assertion, this court has stated that a "life sentence is for the natural life of the person sentenced and is not based upon mortality tables or any other formula." *Campbell v. State*, 265 Ark. 77, 92, 576 S.W.2d 938, 947 (1979); *see Curry v. State*, 276 Ark. 312, 312–13, 634 S.W.2d 139, 139 (1982) (per curiam). Clearly, a sentence for rest of a person's "natural life" makes no distinction from a life sentence, and Green's contention that his sentence is illegal fails. Moreover, it appears that Green's primary contention with the term "natural life" focused more on his claim that the term somehow removed the possibility of parole or clemency rather than addressing the legality of the sentence itself.[3] An inmate sentenced to life imprisonment or for the rest of one's natural life is not eligible for parole unless the sentence is commuted to a term of years by executive

---

[3]This court noted in Green's Rule 37.1 appeal that the trial court found that the State and defense specifically did not enter into an agreement that Green serve any specific term of years in the penitentiary. *See Green*, 297 Ark. at 51, 759 S.W.2d at 212.

clemency. *See* Ark. Code Ann. § 16–93–604(b)(1) (Repl. 2006); s*ee, e.g., Sansevero v. Hobbs*, 2015 Ark. 379, at 4 (per curiam) (A sentence of life imprisonment is a sentence of life imprisonment without the possibility of parole unless the sentence is otherwise commuted to a term of years.). Green has presented no argument or evidence that his sentence was intended to be any other sentence but a life sentence for the rest of his natural life, which is not an illegal sentence.

In his coram-nobis petition, Green argued he was entitled to coram-nobis relief because the penitentiary commitment order was invalid because the judge did not sign it; the proper circuit court clerk seal was not affixed to the commitment order; the commitment order did not state that first-degree murder was a felony or "state the magic words imprisonment in the penitentiary[,]" meaning his commitment was for a misdemeanor; and the court's failure to state a minimum sentencing range during his plea hearing entitled him to issuance of the writ. All of these claims are conclusory without any factual basis, and conclusory claims are not a ground for the writ. *Wilburn v. State*, 2014 Ark. 394, 441 S.W.3d 29 (per curiam). Notwithstanding the conclusory nature of the claims, they are not cognizable in a coram-nobis proceeding because none of the claims allege insanity at the time of trial, a coerced guilty plea, material evidence withheld by the prosecutor, or a third-party confession to the crime during the time between conviction and appeal. *Howard*, 2012 Ark. 177, 403 S.W.3d 38.

Green contended his plea was coerced because he took the plea to "serve 7 years on the life term. In exchange Ms. [Sue] Green would not be charged [with capital murder]." However, Green further contended that trial counsel was ineffective because they should

have enforced the parole-eligibility terms that he be released after serving this same seven years of imprisonment on his negotiated guilty plea. Notwithstanding the conclusory nature of Green's allegations—which again are not grounds for coram-nobis relief—and so far as Green claimed the seven-year agreement was a basis for ineffective assistance of counsel, ineffective-assistance-of-counsel claims are not cognizable in error-coram-nobis proceedings. W*hite*, 2015 Ark. 151, at 4, 460 S.W.3d at 288. With respect to the seven-year agreement as a basis for a coerced guilty plea, Green failed to allege that the guilty plea was the result of fear, duress, or threats of mob violence, which would have served as possible grounds for coram-nobis relief, s*ee Wilburn*, 2014 Ark. 394, 441 S.W.3d 29, in lieu of the claim he raised which appears, at best, to be based upon miscommunications between counsel and himself. Green makes no allegation that anyone other than his own trial counsel misadvised him. *See Biggs*, 2016 Ark. 125, at 4, 487 S.W.3d at 366. Erroneous advice concerning parole eligibility does not automatically render a guilty plea involuntary nor does it support a claim of a coerced plea, providing a basis for coram-nobis relief. *Id*. Moreover, claims regarding parole-eligibility status do not demonstrate that there was some fundamental error of fact extrinsic to the record and do not fit within one of the four categories for coram-nobis relief. *Id*.

Green, citing to *Newman*, 2009 Ark. 539, 354 S.W.3d 61, argued in his coram-nobis petition that he was not told about the fingerprints on the murder weapon belonging to Glen Briner until Dan Harmon's (the prosecutor's) first cousin, another inmate, told him about it in 2011. While allegations of a *Brady v. Maryland*, 373 U.S. 83 (1963), violation fall within one of the four categories of fundamental error that this court has recognized,

the fact that a petitioner alleges a *Brady* violation alone is not sufficient to provide a basis for error-coram-nobis relief. *Davis v. State*, 2016 Ark. 296, ___ S.W.3d ___ (per curiam). Assuming that the alleged withheld evidence meets the requirements of a *Brady* violation and is both material and prejudicial, in order to justify issuance of the writ, the withheld material evidence must also be such as to have prevented rendition of the judgment had it been known at the time of the trial. *See Smith v. State*, 2015 Ark. 188, at 4, 461 S.W.3d 345, 349 (per curiam). To establish a *Brady* violation, three elements are required: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *State v. Larimore*, 341 Ark. 397, 404, 17 S.W.3d 87, 91 (2000).

Here, the alleged fingerprint evidence does not warrant coram-nobis relief. This court is not required to accept the allegations in a petition for a writ of error coram nobis at face value. *Smith*, 2015 Ark. 188, at 4, 461 S.W.3d at 349. An allegation that an inmate passed along information about fingerprints hardly qualifies as proof of a *Brady* violation. Nevertheless, the State's additional response to Green's coram-nobis petition noted that, when Green pleaded guilty, the trial court asked for Green to establish a basis for his guilty plea with a short recitation of the facts and that Green stated he had borrowed Glen Briner's gun on his way to the murder victim's home. Green's allegation that the prosecution withheld material evidence that Briner's fingerprints were on a gun admittedly borrowed from Briner—an allegation known at the time of the guilty plea—does not appear to be

material nor exculpatory, and it would not have prevented rendition of the judgment. Green's claim for relief was properly denied.

Appeal dismissed; motion moot.

*Richard W. Green*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by:  *David R. Raupp*, Ass't Att'y Gen., for appellee