# SUPREME COURT OF ARKANSAS.

### No. CR–16-1113

|  |  |
|---|---|
| BRODERICK DON SCOTT<br>APPELLANT | **Opinion Delivered** June 1, 2017 |
| V. | PRO SE APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT; PRO SE MOTIONS FOR APPOINTMENT OF COUNSEL WITH MEMORANDUM OF LAW AND FOR PRODUCTION OF DOCUMENTS |
| STATE OF ARKANSAS | [NO. 60CR-06-1822] |
| APPELLEE | <u>REVERSED AND REMANDED;</u><br><u>MOTIONS MOOT</u>. |

### COURTNEY HUDSON GOODSON, Associate Justice

In 2006, appellant Broderick Don Scott entered a plea of guilty to first-degree battery, two counts of committing a terroristic act, possession of a firearm by certain persons, aggravated assault, and first-degree terroristic threatening, for which he was sentenced to an aggregate term of 360 months' imprisonment. In 2013, Scott filed in the trial court a pro se petition for writ of error coram nobis challenging the judgment, and on November 26, 2013, the petition was denied. Scott did not file a notice of appeal until February 19, 2014, eighty-five days after the order had been entered. This court denied Scott's motion for belated appeal for failure to establish good cause for the untimely filing of the notice of appeal. *Scott v. State*, 2014 Ark. 199 (per curiam).

On April 20, 2016, Scott again sought coram nobis relief in the trial court. Scott filed an amended pro se petition on May 5, 2016. The trial court, addressing the May 5, 2016 amended coram nobis petition, denied relief and noted that it had found Scott's first

SLIP OPINION

coram nobis petition untimely in 2013 and that Scott's current petition, filed ten years after imposition of sentence, "would be no timelier than the first." Scott has lodged an appeal from the order denying relief. Scott's motion for appointment of counsel and motion for production of documents are also pending before this court.

A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id.* The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38.

The standard of review for the denial of a petition for writ of error coram nobis is whether the trial court abused its discretion in granting or denying the writ. *Nelson v. State*, 2014 Ark. 91, at 3–4, 431 S.W.3d 852, 854–55 (citing *Newman v. State*, 2014 Ark. 7). An

abuse of discretion happens when the trial court acts arbitrarily or groundlessly. *Id.* A hearing is not required if the petition clearly has no merit, either because it fails to state a cause of action to support issuance of the writ, or because it is clear from the petition that the petitioner did not act with due diligence. *Id.*

On appeal, Scott contends that (1) he was denied due process when the prosecutor withheld evidence; (2) he is actually innocent of the offense and that the State withheld exculpatory evidence, specifically in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (3) he was denied the right to confront the victim because the exculpatory evidence was withheld. To the extent that Scott argues he is actually innocent of the offenses of which he was convicted, those assertions do not establish a ground for the writ because they constitute a direct attack on the judgment. *Wallace v. State*, 2016 Ark. 400, at 12–13, 503 S.W.3d 754, 761 (per curiam) (claim of actual innocence amounts to a challenge to the sufficiency of the evidence and is a direct challenge on the judgment below that is not cognizable in a coram nobis proceeding). Regarding his right-to-confront claim, Scott argues that he "could have detailed the nature of the statement during the direct examination of Tamiko Woolford." The nature of this argument is conclusory and unclear and is not cognizable in a coram nobis proceeding because it does not allege insanity at the time of the trial, a coerced guilty plea, material evidence withheld by the prosecutor, or a third-party confession to the crime during the time between conviction and appeal. *Green v. State*, 2016 Ark. 386, 502 S.W.3d 524. Even if arguably an attack on his guilty plea, Scott does not specifically contend that his plea was not voluntary or that it was coerced, and he waived the right to a trial and to confront witnesses. *See Carter v. State*, 2012 Ark. 186 (per curiam).

3

SLIP OPINION

Regarding his claim of a *Brady* violation, Scott argued that, unbeknownst to him until 2013, evidence consisting of a statement made by the victim, Tamiko Woolford, was filed on April 3, 2006, in the North Little Rock District Court—the court in which he was initially arraigned. Scott contended that the State, either willfully or inadvertently, withheld the exculpatory statement that would have prevented him from pleading guilty, and the State's failure to disclose it constituted a *Brady* violation. The statement was file-marked in the North Little Rock District Court; and Scott argues that although the prosecutor may not have specifically been aware of the exculpatory evidence, its existence is imputed to the prosecution in his case. He further contends that, had his trial counsel received the exculpatory evidence, the outcome of the matter would have been different and he would not have entered a plea of guilty in September 2006. Scott argues that the State's failure to disclose the exculpatory evidence entitles him to a hearing on the matter for the trial court to decide the merits of his coram nobis petition.

The State's response on appeal is twofold. First, the State contends that the trial court's order should be affirmed because Scott was not diligent in pursuing coram nobis relief. Specifically, even assuming that Scott was unaware of the statement until 2013, as he claims, he was not diligent in seeking relief because the petition that forms the basis of this appeal was not filed until three years after he had claimed to discover the fact upon which it is premised and nearly ten years after the judgment had been entered. Second, the State contends that Scott failed to obtain a ruling on his argument regarding the *Brady* violation, which precludes appellate review. Alternatively, the State contends that Scott's claim is not meritorious. The State argues that Scott has failed to offer specific facts beyond his own

SLIP OPINION

assertion to show that the State was aware of the victim's statement or that the defense did not have it. The State further argues that the North Little Rock District Court file-mark stamp does not reflect that the victim's statement was filed in any case and that the record, as presented, "does not support [Scott's] claim that the Pulaski County prosecutor, much less any prosecutor, was, or could have been, aware of the witness's statement, which was file-marked in a separate court in another jurisdiction but unrelated to any particular case."

A *Brady* violation is established when material evidence favorable to the defense is wrongfully withheld by the State. *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999) (per curiam). In *Strickler v. Greene*, 527 U.S. 263 (1999), the Supreme Court revisited *Brady* and declared that when the petitioner contends that material evidence was not disclosed to the defense, the petitioner must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

In *Strickler*, the Court also set out the three elements of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler*, 527 U.S. 263; *see Howard*, 2012 Ark. 177, 403 S.W.3d 38.

Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bienemy v. State*, 2016 Ark. 312, at 5, 498 S.W.3d 288, 291 (per curiam) (quoting *Newman*, 2009

Ark. 539, at 13–14, 354 S.W.3d at 69). The rule set out in *Brady* also pertains to evidence known only to police investigators and not to the prosecutor. *Id*.; *see Buckley v. State*, 2010 Ark. 154, at 6 (per curiam); *Lewis v. State*, 286 Ark. 372, 691 S.W.2d 864 (1985). Thus, in order to comply with the standard set forth in *Brady*, a prosecutor has a duty to discover any favorable evidence that is known to individuals who are acting on behalf of the State. *Bienemy*, 2016 Ark. 312, 498 S.W.3d 288. When determining whether a *Brady* violation has occurred, it must first be established that the material was available to the State prior to trial and that the defense did not have it. *Id*.

It is true that this court is not required to accept the allegations in a petition for writ of error coram nobis at face value. *Green*, 2016 Ark. 386, at 9, 502 S.W.3d at 530. However, Scott does not make just a bald statement without supporting documentation— he has submitted a copy of a file-marked statement by the victim. The statement is exculpating because it indicates that Scott did not shoot or harm the victim, and it existed at the time of Scott's guilty plea. Scott's assertion that he would not have pleaded guilty had he known of the statement's existence indicates that he was unaware of the statement's existence at the time of his guilty plea, that he may have suffered prejudice as a result, and that the outcome of the proceeding would have been different. Albeit, there may be some merit to the State's contention that the file-mark stamp does not reflect that the victim's statement was filed in any specific case or that the prosecutor could have been unaware of the statement, which was "file-marked in a separate court in another jurisdiction." This court, however, does not have a plea-hearing transcript, a plea agreement, a prior-victim statement, a criminal information, or any documentation contradicting Scott's affirmative

claims. *Cf. Green*, 2016 Ark. 386, at 9–10, 502 S.W.3d at 530 (Green argued inmate passed along information regarding fingerprints; however, when Green pleaded guilty, the recitation of facts indicated that another person's fingerprints were known to be on the gun because the gun was admittedly borrowed from that person, a fact known at the time of the guilty plea.).

A prosecutor has a duty to discover any favorable evidence that is known to individuals who are acting on behalf of the State. *Bienemy*, 2016 Ark. 312, 498 S.W.3d 288; *see Howard*, 2012 Ark. 177, at 10, 403 S.W.3d at 45–46 (Howard satisfied the second prong of his *Brady* claim on the face of his petition, stating that the State suppressed a report when nothing indicated that he had received a copy of the report, it was not introduced at trial, and it was not in the record.). Scott has demonstrated that if the facts are as he alleges, there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed, and as such, Scott may have demonstrated some apparent merit or entitlement to an evidentiary hearing to determine if the writ should be granted.

This court has noted that addressing whether a petitioner's claim falls within the purview of a coram nobis proceeding or whether a petitioner has exercised due diligence in asserting his or her claims are alternative grounds for denial of relief. *Philyaw v. State*, 2014 Ark. 130, at 7–8 (per curiam); *see Williams v. State*, 2017 Ark. 20, ___ S.W.3d ___ (State argued the trial court's order should be affirmed on alternative grounds for lack of diligence or for failure to demonstrate a reasonable probability that the judgment would not have been entered). As stated, Scott's coram nobis petition was denied for lack of diligence, but

there was no ruling that addressed whether his *Brady* claim fell within the purview of a coram nobis proceeding. *See Howard*, 2012 Ark. 177, at 14, 403 S.W.3d at 47 (where a coram nobis claim has apparent merit, this court has often left it to the trial court to determine the factual issue of diligence).

Although there is no specific time limit for seeking a writ of error coram nobis, due diligence is required in making an application for relief. *Newman*, 2009 Ark. 539, at 5, 354 S.W.3d at 65. In the absence of a valid excuse for delay, the petition will be denied. *Id.* Due diligence requires that (1) the defendant be unaware of the fact at the time of the trial; (2) the defendant could not have, in the exercise of due diligence, presented the fact at trial; and (3) the defendant, after discovering the fact, did not delay bringing the petition. *Id.* at 6, 354 S.W.3d at 65. The requirements are a sequence of events, each of which a petitioner must show to prove due diligence. *Green*, 2016 Ark. 386, 502 S.W.3d 524.

As a valid excuse for the delay, Scott argues that he has timely pursued relief in the trial court and that he did not know the statement existed prior to his guilty plea. He further argues that he could not have, in an exercise of due diligence, presented the fact at his plea hearing because the statement was in the possession of the North Little Rock District Court without his knowledge; and due to his incarceration, which began in March 2006, he and his attorney did not know of the statement's existence because it had been withheld in violation of *Brady*. Although Scott does not give specific times and dates, he contends that he received a letter in which Woolford explained that "she tried to tell the truth along with her affidavit from April 3, 2006[]" and that he had been pursuing his claims of newly discovered evidence and prosecutorial misconduct diligently since that time. Upon

receiving the letter and the statement, he immediately filed his first petition for coram nobis relief. *See Scott*, 2014 Ark. 199. The fact that three years has passed from that filing does not automatically establish that Scott was not diligent.

From the record before this court, it appears that Scott has stated sufficient allegations that may satisfy the due diligence requirement under the standard requiring a review of a sequence of events and that the trial court limited its examination of diligence to the length of time from Scott's imposition of sentence without giving due consideration to Scott's claims regarding when he became aware of the statement.[1] *See Green*, 2016 Ark. 386, 502 S.W.3d 524. Because this court concludes that the *Brady* claim may have merit and because it appears the trial court did not adequately consider Scott's petition on the diligence issue, we reverse and remand the issue to the trial court because the factual determinations of what information was available to Scott and what information was concealed or suppressed are essential in deciding whether the writ should be granted. The trial court is in a position to hold an evidentiary hearing and to consider and test the merits of the petition; and it has the discretion to grant or deny it. *See Larimore v. State*, 327 Ark. 271, 938 S.W.2d 818 (1997). If Scott fails in his burden of proof, or if the matters proven do not establish compelling circumstances requiring the extraordinary relief afforded by a writ of error coram nobis, then such a determination will be based on a full hearing, consideration of the allegations,

---

[1] It is worth noting that the trial court can consider the length of time from the guilty plea in considering Scott's due diligence; however, Scott's alleged actions do not indicate that he has delayed in attempting to raise his claims, that he raised them previously except for his first coram nobis petition, or that the claims could have been raised long before now. *See, e.g.*, *Green*, 2016 Ark. 386, 502 S.W.3d 524; *Philyaw*, 2014 Ark. 130.

and application of the principles of law to the findings of fact. *Id.*; *Williams*, 2017 Ark. 20,

___ S.W.3d ___.

Reversed and remanded; motions moot.

Wood, J., dissents.

*Broderick Don Scott*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kristen C. Green*, Ass't Att'y Gen., for appellee