Cite as 2019 Ark. 269

# SUPREME COURT OF ARKANSAS

No. CR–18-685

| | |
|---|---|
| BRODERICK DON SCOTT<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** October 10, 2019<br><br>PRO SE APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION<br>[NO. 60CR-06-1822]<br><br>HONORABLE LEON JOHNSON, JUDGE<br><br><u>AFFIRMED.</u> |

**JOSEPHINE LINKER HART, Justice**

In 2006, appellant Broderick Don Scott entered a plea of guilty to first-degree battery, two counts of committing a terroristic act, possession of a firearm by certain persons, aggravated assault, and first-degree terroristic threatening, for which he was sentenced to an aggregate term of 360 months' imprisonment. In 2013, Scott filed in the trial court a pro se petition for writ of error coram nobis challenging the judgment, and on November 26, 2013, the petition was denied. Scott did not file a notice of appeal until February 19, 2014, eighty-five days after the order had been entered. This court denied Scott's motion for belated appeal for failure to establish good cause for the untimely filing of the notice of appeal. *Scott v. State*, 2014 Ark. 199 (per curiam).

On April 20, 2016, Scott again sought coram nobis relief in the trial court. Scott filed an amended pro se petition on May 5, 2016. The trial court, addressing the May 5, 2016 amended coram nobis petition, denied relief and noted that it had found Scott's first coram

nobis petition untimely in 2013 and that Scott's current petition, filed ten years after imposition of sentence, "would be no timelier than the first." This court reversed and remanded, concluding that the *Brady v. Maryland*, 373 U.S. 83 (1963), claim may have had merit and that the trial court was in a position to hold an evidentiary hearing to consider and test the merits of the petition. *See Scott v. State*, 2017 Ark. 199, 520 S.W.3d 262.

On remand and after an evidentiary hearing, the trial court again denied relief, and Scott now appeals the denial of his second petition for writ of error coram nobis. On appeal, Scott contends that (1) the trial court erred by finding that Scott failed to demonstrate the State suppressed evidence in violation of *Brady*; (2) the trial court erred by not taking judicial notice of adjudicative facts regarding the file-mark dates on the evidence introduced by the State; (3) the trial court erred when it failed to apply the doctrine of "law of the case" when raised by Scott; (4) the trial court erred by stating that the victim "recanted" her statement;[1] the trial court erred by permitting the State to piecemeal its defense; and (6) the trial court erred by failing to find that Scott suffered prejudice by the suppression of the evidence. Scott has failed to establish that the trial court abused its discretion and that the writ should have issued; as such, we affirm.

---

[1]Scott contends that the trial court erred by making reference to the victim's April 3, 2006 statement as a recantation because there was no evidence that she had previously given a victim statement and that she had in fact previously indicated that she wished to not pursue any charges against Scott "and refused to make a statement." As a result, Scott argues he was prejudiced by the trial court's reference to the victim's statement as a recantation. *See Foreman v. State*, 2018 Ark. 330 (holding that recanted testimony, standing alone, is not cognizable in an error coram nobis proceeding). Notwithstanding this claim, the nature of the victim's statement—whether a recantation or not—is of no moment, as Scott pleaded guilty, and the issue before the court is whether the victim's statement was withheld prior to Scott's guilty plea in violation of *Brady*.

## I. *Standard of Review*

When the judgment is appealed, an appellant must first seek permission in this court to proceed in the trial court with a petition for writ of error coram nobis. *Kain v. State*, 2019 Ark. 113, 570 S.W.3d 466. However, if the judgment of conviction was entered on a plea of guilty or nolo contendere, the petition for writ of error coram nobis is first filed directly with the trial court. *Id.* The standard of review of an order entered by the trial court on a petition for a writ of error coram nobis is whether the trial court abused its discretion in granting or denying the writ. *Osburn v. State*, 2018 Ark. 341, 560 S.W.3d 774. An abuse of discretion occurs when the trial court acts arbitrarily or groundlessly. *Id.* The trial court's findings of fact on which it bases its decision to grant or deny the petition for writ of error coram nobis will not be reversed on appeal unless those findings are clearly erroneous or clearly against the preponderance of the evidence. *Ramirez v. State*, 2018 Ark. 32, 536 S.W.3d 614. There is no abuse of discretion in the denial of coram nobis relief when the claims in the petition were groundless. *Osburn*, 2018 Ark. 341, 560 S.W.3d 774.

## II. *Nature of the Writ*

A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id.* The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental

3

error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771. We are not required to accept the allegations in a petition for writ of error coram nobis at face value. *Jackson v. State*, 2017 Ark. 195, 520 S.W.3d 242.

### III. *Grounds for the Writ*

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38.

### IV. *Claims for Issuance of the Writ*

#### A. Law-of-the-Case-Doctrine and Piecemeal Litigation

Scott's claims that the trial court erred by not applying his argument of the law-of-the-case doctrine and by permitting the State to piecemeal its defense are inapposite and are, at best, conclusory, providing no basis for relief. Under the law-of-the-case doctrine, the decision of an appellate court establishes the law of the case for the trial court upon remand and for the appellate court itself upon subsequent review. *Harmon v. State*, 2019 Ark. 34. The doctrine is not inflexible and does not absolutely preclude correction of error, but it prevents an issue raised in a prior appeal from being raised in a subsequent appeal unless the evidence materially varies between the two appeals. *Camargo v. State*, 337 Ark. 105, 987 S.W.2d 680 (1999). The doctrine also prevents consideration of an argument that could have been raised at the first

appeal and is not made until a subsequent appeal. *Harmon*, 2019 Ark. 34. Furthermore, the requirement that an order be final to be appealable is a jurisdictional requirement, and the purpose of the finality requirement is to avoid piecemeal litigation. *K.W. v. State*, 327 Ark. 205, 937 S.W.2d 658 (1997). The rule of "law of the case" is founded upon "a policy of avoiding piecemeal litigation." *Morris v. Garmon*, 291 Ark. 67, 69, 722 S.W.2d 571, 573 (1987).

Although the legal principles of the law-of-the-case doctrine and piecemeal litigation as cursorily presented by Scott are facially correct, they do not provide any relief for Scott because the petition for writ of error coram nobis was reversed and remanded. Scott's arguments are based on the contention that the State admitted a transcript of a plea hearing, that it was not presented during the prior appeal, and that it was unfair for him to carry a burden of proof during the evidentiary hearing. During the prior appeal, however, this court noted that it "d[id] not have a plea-hearing transcript, a plea agreement, a prior-victim statement, a criminal information, or any documentation contradicting Scott's affirmative claims." *Scott*, 2017 Ark. 199, at 6–7, 520 S.W.3d at 266. In reversing and remanding, this court held that

> [t]he trial court is in a position to hold an evidentiary hearing and to consider and test the merits of the petition; and it has the discretion to grant or deny it. If Scott fails in his burden of proof, or if the matters proven do not establish compelling circumstances requiring the extraordinary relief afforded by a writ of error coram nobis, then such a determination will be based on a full hearing, consideration of the allegations, and application of the principles of law to the findings of fact.

*Id*. at 9–10, 520 S.W.3d at 268 (internal citations omitted). Simply put, there was no decision

5

rendered by this court to limit the trial court, thereby establishing law of the case in this matter—the subsequent appeal—with respect to the *Brady* claim.[2]

## B. *Brady* Violation

Scott contends the trial court erred by failing to find that the State suppressed evidence in violation of *Brady* and that he was prejudiced by the suppression of that evidence. Specifically, he contends that an April 3, 2006 exculpatory statement signed by Tamiko Woolford, the victim of the shooting, that was filed in the North Little Rock District Court was withheld from the defense. Scott further contends that, after he had filed a motion for discovery on December 14, 2017, he later discovered that there were "several exculpatory statements that he was unaware of" within his files. Because Scott did not establish that he was prejudiced by the exculpatory evidence, he failed to provide a basis for coram nobis relief

Suppression of material exculpatory evidence by a prosecutor falls within one of the four previously recognized categories of coram nobis relief. *Osburn*, 2018 Ark. 341, 560 S.W.3d 774. The mere fact that a petitioner alleges a *Brady* violation, however, is not sufficient to provide a basis for error coram nobis relief. *Id.* To establish a *Brady* violation, three elements are required: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *Wallace v. State*, 2018 Ark. 164, 545 S.W.3d 767. To warrant coram nobis relief, the petitioner has the burden of

---

[2]Scott's actual-innocence and denial-of-his-right-to-confront claims were both determined to be not cognizable in coram nobis. *Scott*, 2017 Ark. 199, 520 S.W.3d 262.

demonstrating a fundamental error extrinsic to the record that would have prevented rendition of the judgment had it been known and, through no fault of his own, was not brought forward before rendition of judgment. *Osburn*, 2018 Ark. 341, 560 S.W.3d 774. This means that the petitioner alleging a *Brady* violation must demonstrate that the evidence allegedly suppressed was sufficient to alter the outcome of the trial. *Id.*

There appear to be six statements involved in this matter—three signed by Tamiko Woolford (Tamiko), the victim, and three by Ebony Woolford (Ebony), Tamiko's sister. Tamiko signed a statement, file-marked on April 3, 2006, in the North Little Rock District Court, which states that Scott is innocent; that he was not involved in the shooting; that he was being held for a crime he did not commit; and that he would not harm her in any way. Tamiko also signed and notarized an affidavit on June 9, 2006, that was admitted by the State as State's exhibit 4 during the evidentiary hearing, which states that Scott is innocent; that he was not involved in the shooting; that he was being held for a crime he did not commit; and that the shooter is still on the run. On June 26, 2006, Tamiko signed and had notarized another affidavit that was file-marked on July 17, 2006, which states the exact same assertions made in the June 9, 2006 affidavit. In an affidavit signed and notarized on June 9, 2006, which was file-marked on September 28, 2006, Ebony stated that Scott was innocent; that the person who did the shooting was still running free; that Scott would be free if the identity of the shooter was revealed but the person is unknown by name; and that she would like to drop the charges against Scott. This June 9, 2006 affidavit was also admitted by the State during the evidentiary hearing as State's exhibit 5; however, the copy admitted during the hearing bears

7

no file-mark. An affidavit signed and notarized by Ebony on July 17, 2009, bearing a received stamp on July 17, 2006, is identical to the June 9, 2006 affidavit.

During the evidentiary hearing, Scott testified that he did not receive the exculpatory statement by Tamiko given on April 3, 2006, and that he would not have pleaded guilty had he been given the statement. Scott further testified that, although he took responsibility for the shooting, it "does not settle the fact that exculpatory information was withheld." He also stated that there was more than one statement—a total of six statements, which would have changed the outcome of the situation because he could have cross-examined or interviewed witnesses, filed a motion "in lima," or gone to trial.

Scott's defense counsel, Bill Simpson, testified during the evidentiary hearing and stated that he received a June 9, 2006, affidavit signed by Tamiko as part of discovery. After receiving the June 9, 2006 affidavit signed by Tamiko, Simpson spoke with Tamiko on the day that Scott pleaded guilty. Simpson further testified that there were statements from other witnesses in the file, including statements from Ebony, Tamiko's mother, and Tamiko's uncle. Simpson stated that he had received the June 9, 2006 affidavit signed by Ebony as part of his discovery request. Although both Tamiko's June 9, 2006 affidavit and Ebony's June 9, 2006 affidavit were disclosed to the defense prior to Scott's guilty plea, Simpson testified that he did not receive the April 3, 2006 statement by Tamiko that had been filed in the North Little Rock District Court. However, Simpson noted that Tamiko's April 3, 2006 statement and Tamiko's June 9, 2006 affidavit were similar and contained the "same contents."

8

The trial court found that, although Scott alleged there were six affidavits made by Tamiko, it was aware of only three, and that the three affidavits were "clearly exculpatory because she states Scott was not the individual who shot her on February 21, 2006." The trial court further found that defense counsel testified that Tamiko had made the defense "aware of the April affidavit by Ms. Tamiko Woolford." Furthermore, Tamiko made the same recantation as contained in the April 3, 2006 statement in a subsequent affidavit, which had been disclosed to the defense. Because the same assertion had been made and known to both the parties, the trial court found that it was not a fact extrinsic to the record. Moreover, the trial court noted that during his plea hearing, Scott had pleaded guilty and had taken full responsibility for the shooting. The trial court held that Scott suffered no prejudice because there were "witnesses to the shooting other than Ms. Woolford—including Ms. Woolford's mother, sister (Ebony Woolford), and uncle (George Woolford)—who identified Scott as the shooter."

Scott argues that the defense was not provided with the April 3, 2006 statement, and that defense counsel admits having received only one statement, dated June 9, 2006. However, Scott contends that he did not see any of the statements. Scott further contends that the signature on the June 9, 2006 statement is that of Ebony, Tamiko's sister, and that the file-mark date of September 28, 2006, indicates it was filed after he had pleaded guilty and is proof that the exculpatory statement was "hidden" from him, despite his counsel's testimony to the contrary.

Although Scott argues that the file-mark date is of significance, the file-mark does not have any bearing on when the statements were disclosed to the defense. It appears that Scott

confounds Ebony's June 9, 2006 affidavit with that of Tamiko's.[3] The June 9, 2006 affidavit of Tamiko bears no file-mark while one of Ebony's June 9, 2006 affidavits bears a file-mark date of September 28, 2006. Notwithstanding the file-mark on Ebony's June 9, 2006 affidavit, defense counsel testified that the affidavit was disclosed prior to Scott's plea.[4] As such, Ebony's June 9, 2006 affidavit is not evidence extrinsic to the record, and it was not hidden from the defense. *Scott v. State*, 2019 Ark. 94, 571 S.W.3d 451; *see Williams v. State*, 2017 Ark. 313, 530 S.W.3d 844 (Petitioner failed to demonstrate a *Brady* violation because he did not establish that some fact was hidden from the defense.).

The April 3, 2006 statement of Tamiko was not disclosed. However, there are three elements of a *Brady* violation, and Scott's claim does not satisfy the prejudice prong of *Brady*; the evidence would not have created a "reasonable probability" of a different outcome. *See, e.g.*, *Davis v. State*, 2019 Ark. 172, 574 S.W.3d 666. Although the April 3, 2006 statement by Tamiko was not disclosed, the exculpatory material information contained in that April 3, 2006 statement was not suppressed, as trial counsel admitted having received both Tamiko's and Ebony's June 9, 2006 statements and stated that Tamiko's April 3, 2006 statement and

[3]The trial court's order attached three appendices. Appendix A is Tamiko's April 3, 2006 statement. Appendix B is Tamiko's June 26, 2006 affidavit that was file-marked on July 17, 2006. Appendix C is one of Ebony's affidavits; however, the second page that would have included the date and notarization is missing. Notably, all three of Ebony's affidavits are identical except for the date on which they were signed and notarized; however, based on the file-mark stamp of September 28, 2006, it appears this is Ebony's affidavit that was signed and notarized on June 9, 2006. Nevertheless, it appears that the trial court mistakenly attached one of Ebony's affidavits because the order clearly states that its intent was to attach Tamiko's three affidavits, and both Ebony and Tamiko signed and had their affidavits notarized on June 9, 2006.

[4]Ebony's June 9, 2006 affidavit was admitted by the State during the evidentiary hearing as State's exhibit 5, and the copy admitted during the hearing bears no file-mark stamp; however, it appears to be otherwise identical to the affidavit attached to the trial court's order.

Tamiko's June 9, 2006 affidavit were similar and contained the "same contents." Scott's trial counsel clearly established that the defense was fully aware of the contents of Tamiko's June 9, 2006 statement, which contained the "same contents" as Tamiko's April 3, 2006 statement. Because Scott has failed to demonstrate that he was prejudiced by not receiving the April 3, 2006 statement prior to his plea, we find that the trial court did not abuse its discretion in denying the writ for coram nobis relief

Affirmed.

*Broderick Don Scott*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.