Cite as 2020 Ark. 319

# SUPREME COURT OF ARKANSAS

No. CR-09-1213

| | |
|---|---|
| ANTHONY BRIAN WILLIAMSON<br>PETITIONER | **Opinion Delivered** October 15, 2020 |
| V. | |
| STATE OF ARKANSAS<br>RESPONDENT | PRO SE SECOND PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS; MOTION FOR DISCOVERY AND FOR APPOINTMENT OF COUNSEL; MOTION FOR DEFAULT JUDGMENT [SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT, NO. 66FCR-08-1236]<br><br>PETITION DENIED; MOTION FOR DISCOVERY AND APPOINTMENT OF COUNSEL MOOT; MOTION FOR DEFAULT JUDGMENT MOOT. |

**JOHN DAN KEMP, Chief Justice**

Petitioner Anthony Brian Williamson brings this pro se second petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis in his criminal case. In the petition, Williamson contends the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding DNA reports generated by the Arkansas State Crime Laboratory (ASCL) and an outside forensic lab in Texas, Orchid Cellmark, and by manipulating the DNA evidence to falsely link him to the crime. Because Williamson has

not established a *Brady* violation or that evidence was falsified as grounds for issuance of the writ, the petition is denied. Williamson's motion for discovery and appointment of counsel and motion for default judgment have been rendered moot.

I. *Facts*

Williamson was convicted by a jury of aggravated robbery and kidnapping, for which an aggregate sentence of 360 months' imprisonment was imposed. The Arkansas Court of Appeals affirmed. *Williamson v. State*, 2010 Ark. App. 595. Testimony at trial revealed that in May 2007, the manager of Ace Cash Express, Jackie Moran, arrived at work in the morning, turned off the alarm, and went into the restroom. As Moran turned to leave the restroom, a man broke through the return vent from the air conditioning system, pointed a gun at Moran, and demanded that she open the safe. *Id.* After the safe was opened, the perpetrator removed money from the safe and tied up Moran, took the keys to Moran's car, and fled the scene. *Id.* Although the perpetrator was wearing a ski mask, Moran described the perpetrator as a black male, approximately 170 pounds, and about five feet seven inches tall. *Id.* Moran's description matched the size and build of Williamson. *Id.*

After arriving at the scene, an investigator discovered a smudge of what appeared to be blood on the restroom wall. A sample of the blood was collected, and a DNA test was performed on the sample. The test revealed with scientific certainty that the DNA was from Williamson. *Id.* Evidence also established that the restroom was for employees only and was located behind two locked doors that required a security code as well as a key in order to be

entered. Therefore, Williamson's blood could not have been innocently left on the restroom wall. *Id.*

Williamson filed his first petition for coram nobis relief in 2015 and alleged that the State committed a *Brady* violation by manipulating the DNA evidence. Specifically, Williamson alleged that the State substituted blood recovered from a rental car being driven by Williamson when he was arrested for an unrelated crime for the blood recovered from the bathroom wall of the crime scene. We denied the petition. *Williamson v. State*, 2015 Ark. 373, 471 S.W.3d 633.

Williamson now raises a *Brady* claim alleging that the State withheld crime-lab reports from Orchid Cellmark that stated that the DNA extracted from blood found at Ace Cash Express was from "an unknown male." Williamson further claims that the ASCL, the prosecutor, and his defense counsel had conspired to manipulate the DNA evidence to falsely identify him as the assailant by substituting DNA recovered from an unrelated case. Williamson's remaining claims are allegations of ineffective assistance of counsel in that he contends that his trial counsel conspired with the prosecutor to manipulate the DNA evidence and also allowed Williamson's right to a speedy trial to be violated. Attached to Williamson's petition are crime-lab reports from the ASCL and Orchid Cellmark that were forwarded to Williamson in February 2020.

II. *Writ of Error Coram Nobis*

The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on

3

appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Green v. State*, 2016 Ark. 386, 502 S.W.3d 524. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999). A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38. The burden is on the petitioner in the application for coram nobis relief to make a full disclosure of specific facts relied upon and not to merely state conclusions as to the nature of such facts. *McCullough v. State*, 2017 Ark. 292, 528 S.W.3d 833.

While allegations of a *Brady* violation fall within one of the four categories of fundamental error that this court has recognized in coram nobis proceedings, the fact that a

4

petitioner alleges a *Brady* violation alone is not a sufficient basis for error coram nobis relief. *Jackson v. State*, 2017 Ark. 195, 520 S.W.3d 242. To merit relief on a claim of a *Brady* violation, a petitioner must demonstrate a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed at trial. *Id.* There are three elements of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *Carner v. State*, 2018 Ark. 20, 535 S.W.3d 634. Before the court can determine whether a *Brady* violation has occurred, the petitioner must first establish that the material was available to the State prior to trial and that the defense did not have it. *Id.*

III. *Claims for Relief*

Williamson claims that reports from the ASCL and Orchid Cellmark were withheld in violation of *Brady* and that the reports contain exculpatory evidence. A review of the lab reports submitted by Williamson do not contain material, exculpatory evidence. Specifically, the blood samples collected from the crime scene were forwarded to Orchid Cellmark in March 2008. On March 31, 2008, Orchid Cellmark generated a report stating that the DNA profile extracted from the blood sample was from an "unknown male." The profile was sent back to the ASCL, and on April 17, 2008, a "Match Detail Report" was generated by the ASCL, which Williamson alleges demonstrates that no match to the DNA profile was found. However, the "Match Detail Report" indicates in a section titled "match summary" that two

5

candidates had been identified. A subsequent report issued by the CODIS administrator on May 6, 2008, unequivocally states that a match to Anthony Williamson had been found in convicted-offender databases.

The match found in the convicted-offender databases provided probable cause for a search warrant to issue, and a DNA sample was obtained from Williamson in April 2009. The DNA obtained from Williamson in 2009 matched the DNA extracted from the blood at the crime scene. The forensic examiner testified that the statistical odds of the DNA being from some other person were one in seventeen quadrillion.

When a petitioner alleges a *Brady* violation as the basis for his or her claim for relief in coram nobis proceedings, the facts alleged in the petition must establish that there was evidence withheld that was both material and prejudicial such as to have prevented rendition of the judgment had it been known at the time of trial. *Martinez-Marmol v. State*, 2018 Ark. 145, 544 S.W.3d 49. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.*

Williamson does not establish that the forensic lab reports were not turned over to the defense. The record demonstrates that the defense was given access to the prosecution file during the course of discovery.[1] Moreover, within the documents attached to

---

[1]This court may take judicial notice in postconviction proceedings of the record on direct appeal without the need to supplement the record. *Reynolds v. State*, 2020 Ark. 174, 599 S.W.3d 120.

Williamson's petition is an email from the ASCL regarding a request from the prosecution for copies of data generated by the ASCL related to Williamson's case. The email request was made in response to a defense discovery request. In short, Williamson has failed to offer sufficient evidence that the reports and records attached to his petition were withheld from the defense.

Even assuming that the reports were not turned over to the defense, Williamson has failed to demonstrate that these reports were material and exculpatory. The fact that Orchid Cellmark's report indicated that the DNA extracted by the forensic examiner was from an unknown male is of no moment. There is no evidence in the record that Orchid Cellmark was tasked with finding a match to the extracted DNA or that Orchid Cellmark performed any search of databases before returning the blood sample and its findings to the ASCL. Instead, it is clear that the evidence and findings were returned to the ASCL, which subsequently performed the search for a match. The "Detail Match Report" is not conclusive and does not demonstrate that no matches to the DNA were found, and a subsequent report clearly establishes that after a search of two databases, a match to Williamson was made. In sum, Williamson fails to establish that material evidence was withheld that if known at the time of trial would have changed the outcome of the proceedings. *Martinez-Marmol*, 2018 Ark. 145, 544 S.W.3d 49.

Williamson further alleges that DNA from an unrelated case, lab case No. 2007-018193, was substituted for the DNA extracted from his case, lab case No. 2007-012616. The lab reports submitted with the petition demonstrate that the blood evidence recovered

from the crime scene in Williamson's case was identified as lab case No. 2007-012616 and that ASCL sent the blood sample to Orchid Cellmark to be examined with other samples recovered from fifteen other crime scenes, which included samples from lab case No. 2007-018193. Williamson further alleges that the email from the ASCL regarding a request from the prosecutor not only asked for data from lab case No. 2007-012616 but also requested an "Orchid Sample Prep image" from lab case No. 2007-018193. Williamson contends that these documents support his claim that the DNA samples were falsified by the ASCL when it substituted samples from a separate case––2007-018193.

Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Green*, 2016 Ark. 386, 502 S.W.3d 524. To overcome that presumption, the petitioner bears the burden of presenting facts to support the claims for the writ because an application for the writ must make a full disclosure of specific facts relied upon and not merely state conclusions as to the nature of such facts. *McCullough*, 2017 Ark. 292, 528 S.W.3d 833. Williamson's allegation that the DNA sample was substituted with a sample from another case is without evidentiary support. The fact that the samples taken from the crime scene in his case were submitted for evaluation with other samples from unrelated cases does not demonstrate a substitution or falsification of DNA results. So too, an email request for additional data from an unrelated case fails to establish that the ASCL substituted one sample for another.

Williamson's remaining allegations constitute ineffective-assistance-of-counsel claims. Coram nobis proceedings are not to be used as a substitute for timely raising claims of

8

ineffective assistance of counsel under our postconviction rule, Arkansas Rule of Criminal Procedure 37.1. *McCullough v. State*, 2020 Ark. 49.

Petition denied; motion for discovery and appointment of counsel moot; motion for default judgment moot.

*Anthony Brian Williamson*, pro se petitioner.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for respondent.