

# SUPREME COURT OF ARKANSAS

No. CR–12–644

| | |
|---|---|
| BOBBY CHARLES NELSON<br>APPELLANT | **Opinion Delivered** February 27, 2014 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. CR74605] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE HERBERT THOMAS WRIGHT, JR., JUDGE |
| | <u>AFFIRMED</u>. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Bobby Charles Nelson appeals from the order of the Pulaski County Circuit Court denying his petition for a writ of error coram nobis.[1] He asserts two points on appeal: (1) that the circuit court abused its discretion in denying his petition and (2) that the circuit court erred in denying his petition without a hearing. We affirm the circuit court's order.

The instant record reflects that on June 20, 1972, Nelson pled guilty to murder in the first degree and was sentenced to life imprisonment. On April 9, 2012, Nelson, through counsel, filed his petition for writ of error coram nobis, which asserted two bases for relief: (1) that his guilty plea was the product of coercion and was not knowingly, intelligently, or

---

[1]Normally, an appellant must first seek permission in this court to proceed in the circuit court with a petition for writ of error coram nobis. *See, e.g.*, *McJames v. State*, 2010 Ark. 74. However, where as here, the judgment of conviction was entered on a plea of guilty or nolo contendere, the petition for writ of error coram nobis is filed directly with the circuit court. *See id.*



voluntarily entered; and (2) that his guilty plea was further involuntary due to his counsel's

operating under a conflict of interest by simultaneously representing him and a codefendant

who had competing interests. The circuit court denied Nelson's petition and found, in

pertinent part:

> [T]he defendant's contention that his plea had been coerced by the threat of the death penalty was rejected by this Court in the Findings of Fact entered on July 23, 1974. Lastly, any allegation of ineffective assistance of counsel should have been raised in the defendant's Criminal Procedure Rule 1 petition. The defendant's final two grounds for relief are also cognizable pursuant to Rule 37, then Rule 1, and should have been raised in the petition filed April 5, 1974.
> The issues raised in the instant petition can be conclusively decided from the files and records of the case, and an evidentiary hearing is not required.[2]

It is from this order that Nelson now appeals.

On appeal, Nelson argues that he was entitled to a writ of error coram nobis. He

asserts that his trial counsel operated under a conflict of interest that arose when his trial

counsel obtained a plea bargain with the State for his codefendant by which the codefendant

would testify against Nelson in exchange for a lesser sentence. He maintains that because of

that conflict, his trial counsel had to convince him to plead guilty and accept a life sentence

---

[2]The circuit court delineated Nelson's grounds for the writ as follows:
    1. His plea was coerced by the threat of the death penalty, which according to defendant's petition had been declared unconstitutional in 1971 by the Supreme Court of the United States and therefore his attorney was ineffective by advising him that the death penalty was a possible sentence.
    2. His plea was induced by his attorney's assurance that he would only serve twenty-one years of a life sentence, which was contrary to law and constituted ineffective assistance of counsel.
    3. His attorney had a conflict of interest in that he also represented a co-defendant who accepted a plea bargain to a lesser offense in exchange for his testimony against the defendant.



since his trial counsel would not have been able to effectively cross-examine his codefendant. Nelson additionally contends that his trial counsel misrepresented his parole eligibility to him to further coerce him into pleading guilty. Finally, he urges that the circuit court abused its discretion in denying his petition without a hearing. The State counters, asserting that Nelson's claims are allegations of ineffective assistance of counsel that are not cognizable in coram nobis proceedings and should have been raised in his previous postconviction proceedings. It further asserts that Nelson has not shown due diligence in bringing his petition. We agree with the State that Nelson's claims are ones not cognizable in a proceeding for error coram nobis; therefore, no hearing was required on his petition.

Error coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *See Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38. The writ of error coram nobis is an extraordinarily rare remedy, more known for its denial than its approval. *See id*. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition had it been known to the trial court and that, through no negligence or fault of the defendant, was not brought forward before rendition of judgment. *See id*. The writ is issued only under compelling circumstances to achieve justice and to address errors of the most fundamental nature, and it is available to address only certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *See id*.

The standard of review for the denial of a petition for writ of error coram nobis is



whether the circuit court abused its discretion in granting or denying the writ. *See Newman v. State*, 2014 Ark. 7. An abuse of discretion occurs when the circuit court acts arbitrarily or groundlessly. *See id.* We have further held that when a petition for writ of error coram nobis is filed directly in the circuit court, a hearing is not required if the petition clearly has no merit, either because it fails to state a cause of action to support issuance of the writ, or because it is clear from the petition that the petitioner did not act with due diligence. *See, e.g., Deaton v. State*, 373 Ark. 605, 285 S.W.3d 611 (2008) (per curiam). To determine whether Nelson should have received a hearing on his petition, this court must necessarily examine whether Nelson's petition clearly had no merit, in that it either failed to state a cognizable claim for error coram nobis relief or in that he did not act with due diligence.

Our review of Nelson's petition reveals no claim that he is "innocent or that his plea was coerced in the sense that it was the result of fear, duress, or threats of mob violence as previously recognized by this court as cognizable in coram nobis relief." *Wright v. State*, 2014 Ark. 25, at 5 (per curiam). Nor has Nelson offered any substantiation that he was subjected to any specific mistreatment; that is, he did not aver he was somehow coerced into appearing before the court and entering his plea. *See Bannister v. State*, 2014 Ark. 59 (per curiam); *Edwards v. State*, 2013 Ark. 517 (per curiam). The mere pressure to plead guilty occasioned by the fear of a more severe sentence is not coercion. *See, e.g., Pierce v. State*, 2009 Ark. 606 (per curiam). Likewise, we have held that erroneous advice concerning parole eligibility does not automatically render a guilty plea involuntary. *See Morgan v. State*, 2013 Ark. 341 (per curiam). With regard to claims involving counsel operating under a conflict of interest, we



have held that those are ineffective-assistance-of-counsel claims, which are outside the purview of a coram nobis proceeding. *See, e.g.*, *Watts v. State*, 2013 Ark. 485 (per curiam); *Gardner v. State*, 2011 Ark. 27 (per curiam).

While Nelson attempts to couch his claims in terms of a coerced-guilty plea, it simply does not alter the fact that the actual basis for his claims is ineffective assistance of counsel. In his petition, Nelson contended that his "[t]rial counsel coerced [him] into pleading guilty . . . by (1) exploiting his fear of being sentenced to death and (2) assuring him that he would only serve twenty-one years of a life sentence, both of which are unfounded." He further asserted that his counsel operated under a conflict of interest while defending him, such that he was deprived of due process. But, merely because Nelson asserts that his claims involve a coerced guilty plea does not require this court to treat them as such. Instead, this court routinely looks to the true nature of a petitioner's claim, rather than how a petitioner couches the claim. *See, e.g.*, *Morgan*, 2013 Ark. 341; *Benton v. State*, 2011 Ark. 211 (per curiam); *Crosby v. State*, 2009 Ark. 555 (per curiam); *Starling v. State*, 2009 Ark. 156 (per curiam); *Nation v. State*, 292 Ark. 149, 728 S.W.2d 513 (1987) (per curiam).

Moreover, we have repeatedly held that allegations made in support of error coram nobis relief that are premised on ineffective-assistance-of-counsel claims are not cognizable in error coram nobis proceedings. *See, e.g.*, *McClure v. State*, 2013 Ark. 306 (per curiam); *Cromeans v. State*, 2013 Ark. 273 (per curiam); *McDaniels v. State*, 2012 Ark. 465 (per curiam). To that end, we have been clear that error coram nobis proceedings are not a substitute for proceeding under Rule 37.1 to challenge the validity of a guilty plea, nor are the two

5

proceedings interchangeable. *See, e.g., State v. Tejeda-Acosta*, 2013 Ark. 217, ___ S.W.3d ___. This holds true even when the deadline for filing Rule 37 relief has passed, as fundamental fairness and due process do not require an unlimited opportunity to file Rule 37 petitions. *See id.*

It is clear to this court that Nelson's claims are actually predicated on allegations of ineffective assistance of counsel; however, it has been well established by this court that such allegations are simply not cognizable in a proceeding for error coram nobis. Because Nelson's petition did not state a cognizable claim for relief, the circuit court did not abuse its discretion in denying Nelson's petition or in deciding the matter without a hearing.[3] Accordingly, we affirm the circuit court's order.

Affirmed.

BAKER, HART, and HOOFMAN, JJ., dissent.

**KAREN R. BAKER, Justice, dissenting.** I dissent from the majority opinion because Nelson's petition for writ of error coram nobis should be reversed and remanded for a hearing.

---

[3]Although there is no specific time limit for seeking a writ of error coram nobis, due diligence is required in making an application for relief. *See Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. In the absence of a valid excuse for delay, the petition will be denied. *See id.* Due diligence requires that (1) the defendant be unaware of the fact at the time of the trial; (2) the defendant could not have, in the exercise of due diligence, presented the fact at trial; and (3) the defendant, after discovering the fact, did not delay bringing the petition. *See id.* Because it is clear that Nelson's petition failed to state a cognizable basis on which error coram nobis could issue, we need not address whether it was clear from Nelson's petition that he did not act with due diligence. *See, e.g., Barker v. State*, 2010 Ark. 354, 373 S.W.3d 865 (not addressing due diligence where the appellant's petition failed to state a cognizable claim for coram nobis relief).

SLIP OPINION

Nelson's guilty plea to first-degree murder and sentence to life imprisonment stem from the February 5, 1972 death of Raymond Tuck. Nelson and three other men, Robert Hill, Jr., Clarence Perry, and Chester Perry, were involved in a fight with Tuck, used their fists to beat Tuck, and then beat Tuck with a fence board. Tuck died as a result of his injuries. Hill, Clarence Perry, and Chester Perry each pleaded guilty to accessory to murder and each was sentenced to a term of ten years' imprisonment. Each also agreed to testify against Nelson.

At the time of Nelson's plea agreement, Nelson had retained and was represented by Attorney Gene Worsham. After Nelson retained Worsham, Worsham accepted an appointment from the circuit court to represent Nelson's codefendant, Hill. Nelson contends that Worsham secured a 10-year plea agreement for Hill in exchange for Hill's agreement to testify against Nelson at trial. Nelson alleges that Hill advised Worsham that Nelson was the principal actor in Tuck's murder. Nelson, on the other hand, advised Worsham that Hill was the principal actor in Tuck's murder. Based on this conflict, Nelson contends that Worsham misrepresented Nelson's sentence and parole eligibility to him, and coerced Nelson to enter into his plea agreement by asserting that Nelson would be given the death penalty at trial based on Hill's testimony. Nelson asserts, however, that at the time of his plea, Nelson was not privy to Worsham's representation of Hill. Nelson further asserts that Hill worked as a carpenter for Worsham for several years, and Hill's father also worked for Worsham at the time the two men entered into their respective plea agreements.

The majority affirms the circuit court's holding that Nelson's claim is not a cognizable

claim for a writ of error coram nobis. The majority characterizes Nelson's assertion of coercion as a simple claim of conflict of interest and a classic claim of ineffective assistance of counsel. However, Nelson's allegations are much more serious than recognized by the majority. Nelson's allegation of a coerced guilty plea hinges on Nelson's reliance on his own counsel's advice, when the purpose of that advice was to assist a codefendant also represented by Worsham, while obliging Nelson to plead guilty, all to Nelson's detriment. These circumstances may well evidence Nelson was under duress when he pleaded guilty.

In *Holloway v. Arkansas*, 435 U.S. 475, 489–90 (1978), the United States Supreme Court addressed dual representation and explained that

> [j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. . . . Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied. The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters.

Further, "counsel's allegiance to a client must remain unaffected by competing obligations to other clients, and an actual conflict of interest renders judicial proceedings fundamentally unfair. *United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1978). A conflict occurs, whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing. *Foxworth v. Wainwright*, 516 F.2d 1072, 1076 (5th Cir. 1975)." *Barclay v. Wainwright*, 444 So. 2d 956, 958 (Fla. 1984).

The majority states, citing *Wright v. State*, 2014 Ark. 25, that "Nelson's petition reveals



no claim that he is 'innocent or that his plea was coerced in the sense that it was the result of fear, duress, or threats of mob violence as previously recognized by the court as cognizable in coram nobis relief' " thereby removing Nelson's claim from this court's interpretation of a cognizable coerced guilty plea.

Although the majority cites to *Wright*, Wright did not allege that his plea was the product of fear, duress, or mob violence. *Wright* in turn cites to *Hardwick v. State*, 220 Ark. 464, 248 S.W.2d 377 (1952), where Hardwick alleged intimidation and coercion; however, we remanded that case on different grounds. *Hardwick* cites to *State v. Hudspeth*, 191 Ark. 963, 88 S.W.2d 858 (1935), where we denied Hudspeth relief because his claims of duress and mob violence were known to him at the time he entered his guilty plea. We stated, "If one is caused to enter a plea of guilty in a criminal case from fear or duress, he is entitled to the writ. . . . If mob violence had had anything to do with [Hudspeth] entering the plea of guilty, he should have made that plea at the time he asked the court to permit him to withdraw his plea of guilty." *Hudspeth*, 191 Ark. At 969–70, 88 S.W.2d at 861. These cases, however, indicate that a coerced guilty plea is one given under duress.

In applying our case law here, Nelson has alleged a conflict of interest that was unknown to him when he pleaded guilty; a conflict that significantly benefited his codefendant and coerced Nelson to plead guilty to his detriment. At a minimum, Nelson's petition commands a hearing and cannot be denied based on the record before the court. We have explained that "a hearing is not required if the petition clearly has no merit . . . in that it fails to state a cause of action to support issuance of the writ." *Deaton v. State*, 373 Ark. 605,

608, 285 S.W.3d 611, 614 (2008). However, here, upon review of the record, the record alone, without a hearing, does not support the dismissal of Nelson's petition for writ of error coram nobis. It cannot be said without an evidentiary hearing that the allegations of Nelson's coerced guilty-plea argument are without merit. *See Buckley v. State*, 2010 Ark. 154 (per curiam).

Therefore, I would remand Nelson's petition to the circuit court so that it may conduct an evidentiary hearing, consider Nelson's petition for writ of error coram nobis, and issue an order containing its findings of fact and conclusions of law.

HART and HOOFMAN, JJ., join in this dissent.

*J. Brooks Wiggins*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.