SLIP OPINION

Cite as 2017 Ark. 195

# SUPREME COURT OF ARKANSAS

No. CR-03-800

| | |
|---|---|
| ANARIAN CHAD JACKSON<br>PETITIONER<br><br>V.<br><br>STATE OF ARKANSAS<br>RESPONDENT | Opinion Delivered JUNE 1, 2017<br><br>PRO SE SIXTH PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS; MOTION TO DISMISS RESPONDENT'S UNTIMELY RESPONSE; MOTION FOR REMAND TO TRIAL COURT FOR AN EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL; MOTION TO SUPPLEMENT PETITION; MOTION TO SUPPLEMENT MOTION TO REMAND TO TRIAL COURT FOR AN EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL; MOTION TO ADD TO MOTION TO SUPPLEMENT PETITION [PULASKI COUNTY CIRCUIT COURT, NO. 60CR–01–1009 ]<br><br>PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT DENIED; MOTION TO SUPPLEMENT PETITION, AND MOTION TO ADD TO THE SUPPLEMENT OF THE PETITION DENIED; MOTION TO DISMISS RESPONDENT'S UNTIMELY RESPONSE, MOTION FOR REMAND TO TRIAL COURT FOR AN EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL, MOTION TO SUPPLEMENT MOTION TO REMAND TO THE TRIAL COURT FOR AN EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL MOOT. |

**KAREN R. BAKER, Associate Justice**

In 2002, petitioner, Anarian Chad Jackson, was found guilty by a jury of first–degree

murder in the shooting death of Charles Raynor and was sentenced to life imprisonment.

SLIP OPINION

We affirmed. *Jackson v. State*, 359 Ark. 297, 197 S.W.3d 468 (2004). Now before this court is Jackson's sixth pro se petition requesting that this court reinvest jurisdiction in the trial court in the case to consider a petition for writ of error coram nobis. Also before this court are Jackson's pro se motions to dismiss the State's response to his petition, his pro se motion for remand to the trial court for an evidentiary hearing and appointment of counsel, his pro se motion to supplement his coram nobis petition, his pro se motion to supplement his motion to remand to the trial court for an evidentiary hearing and appointment of counsel; and his pro se motion to add to motion to supplement the petition. For the reasons set forth below, Jackson's successive petition for coram nobis relief is denied, and his pro se motions to supplement his successive petition are denied. Jackson's remaining motions are moot.

The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, at 5, 354 S.W.3d 61, 65. A writ of error coram nobis is an extraordinarily rare remedy. *Nelson v. State*, 2014 Ark. 91, at 3, 431 S.W.3d 852, 854. Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id.* The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Id.* The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Id.* The writ is allowed only under compelling circumstances to

2

SLIP OPINION

achieve justice and to address errors of the most fundamental nature. *Id.* A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Id.*; *Howard v. State*, 2012 Ark. 177, at 4, 403 S.W.3d 38, 43.

When a petitioner files successive applications for coram nobis relief in this court, it is an abuse of the writ to argue the same claims that have been addressed if the petitioner does not allege new facts that are sufficient to distinguish his latest claims from the prior claims. *See United States v. Camacho-Bordes*, 94 F.3d 1168 (8th Cir.1996) (holding that res judicata did not apply to bar a second petition for writ of error coram nobis, but abuse-of-writ doctrine was applied to subsume res judicata). Jackson has repeatedly alleged in his successive petitions that investigators and the prosecutor procured false testimony through threats and promises and suppressed exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

While allegations of a *Brady* violation fall within one of the four categories of fundamental error that this court has recognized in coram nobis proceedings, the fact that a petitioner alleges a *Brady* violation alone is not sufficient to provide a basis for error coram nobis relief. *See Cloird v. State*, 357 Ark. 446, 452, 182 S.W.3d 477, 480 (2004) (setting forth the factors that must be demonstrated to state a sufficient Brady claim). To merit relief on a claim of a *Brady* violation, a petitioner must demonstrate that there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed at trial. *Id.*

In his first petition, Jackson contended that the prosecutor had elicited false testimony from trial witnesses Takesha Griffin, who is Jackson's first cousin, and Chris Bush, who was convicted as an accomplice in the murder of Raynor. *Jackson v. State*, 2009 Ark. 176, at 1–2 (per curiam). We denied relief, finding no factual support for Jackson's conclusory allegations. *Id*. at 3–5. In his fifth[1] petition for coram nobis relief, Jackson focused on the testimony of Griffin and alleged that Griffin had provided investigators with pretrial statements exonerating Jackson and disclosing that Jackson was in Texas at the time of the murder. *Jackson v. State*, 2014 Ark. 347, at 4, 439 S.W.3d 675, 677–78 (per curiam). We found that allegations involving Griffin's testimony were not extrinsic to the record, in that the trial record indicated that the defense was aware of the alibi defense and was also aware that Griffin had provided multiple contradictory pretrial statements. *Id*. at 4–6, 439 S.W.3d at 678–79.

In his sixth petition, Jackson again contends that Bush and Griffin[2] were coerced by investigators and prosecutors through scare tactics and promises of leniency to provide false testimony and suppressed exculpatory evidence in violation of *Brady*. As with his previous petitions, Jackson adds new factual details in support of his reconstituted *Brady* claims.

---

[1] Jackson's second coram nobis petition was dismissed because we found that his allegations constituted an abuse of the writ. *Jackson v. State*, 2010 Ark. 81, at 2–3 (per curiam). Jackson filed a third and a fourth "motion to reinvest jurisdiction in trial court to consider a writ of error coram nobis." Those two motions were dismissed by this court by per curiam order in a syllabus entry on March 8, 2011.

[2] Takesha Griffin is now known as Takesha Shepard but will be referred to by her former name of Griffin to avoid confusion.

Jackson now contends that the prosecutor secretly dismissed a firearm charge arising from Bush's possession of a .40-caliber weapon, provided a favorable resolution of a drug offense committed by Bush in 1999, and misrepresented the facts surrounding Bush's favorable treatment to the trial court. In support of these new allegations, Jackson provides excerpts from his trial transcript, a docket sheet from Pulaski County pertaining to Bush's 1999 conviction, and an affidavit from Bush recanting his testimony and identifying "Little Mark," who is also known as Marcus Hunter, as the true perpetrator of the crime.

With respect to Griffin's testimony, Jackson again contends that her pretrial sworn statements implicating Jackson were the product of police misconduct that occurred during the time Griffin had spent with investigators over a period of several days. Jackson attaches another affidavit from Griffin, adding that she had engaged in oral sex with one of the investigating officers and that investigators had provided her with money to purchase crack cocaine in exchange for providing sworn testimony to implicate Jackson. Jackson maintains that the new facts set forth in Griffin's current affidavit represent newly discovered information that was known to prosecutors and withheld from the defense in violation of *Brady*.

Jackson further alleges that the prosecutor had been put on notice that Detective Knowles, who Griffin alleges had pressured her to provide false testimony, had been previously accused of misconduct and attempting to bribe witnesses. In support of this allegation, Jackson cites *Collier v. State*, CACR-00-348[3] (Ark. Sept. 20, 2001) (unpublished

---

[3] For clerical purposes the coram nobis petition was assigned the same docket number as the direct appeal of the judgment.

per curiam), wherein this court denied a petition for a writ of error coram nobis which was based in part on an allegation that "the Little Rock Police Department"[4] had paid a witness $300.00 for his testimony and had additionally promised the witness a $10,000 reward in exchange for false testimony. *Collier*, Slip op. at 2. According to Jackson, the prosecutor had a duty to disclose this evidence of Knowles's prior misconduct.

The affidavits and attached trial transcript and docket sheet fail to substantiate Jackson's allegations, and in fact, demonstrate that the prosecutor made no misrepresentations to the trial court[5] and did not dismiss a firearm charge. As to Bush's affidavit, we have explained that recanted testimony, standing alone, is not cognizable in an error coram nobis proceeding. *See Smith v. State*, 200 Ark. 767, 140 S.W.2d 675 (1940) (holding that the writ was not available to afford relief on the ground that the principal witness against the accused had recanted and that others since the accused's conviction had confessed to the crime); *see also Taylor v. State*, 303 Ark. 586, 799 S.W.2d 519 (1990) (A witness's recantation of part of his trial testimony was not a ground for the writ as recantation of testimony did not fit within the remedy.).

---

[4] There is no reference to Detective Knowles or the names of other specific officers in our decision. *Collier*, CACR–00–348, Slip op. at 2.

[5] Jackson contended that the prosecutor misrepresented to the trial court that Bush's previous 1999 drug charge was a class C felony, rather than, as Jackson maintains, a class Y felony. The docket sheet demonstrates that Bush was charged with a class C felony in 1999, as the prosecutor had asserted.

We are not required to accept the allegations in a petition for writ of error coram nobis at face value. Instead, we look to the reasonableness of the allegations of the petition and to the existence of the probability of the truth thereof. *Howard*, 2012 Ark. 177, at 5, 403 S.W.3d at 43. Griffin's affidavit is simply another example of Griffin's history of providing multiple accounts of the facts surrounding the pretrial sworn statements she provided to investigators and prosecutors. Finally, Jackson's contention surrounding evidence of prior misconduct on the part of Detective Knowles is without merit in that the case relied upon by Jackson did not establish the existence of credible evidence that Knowles or any officer with the Little Rock Police department had engaged in witness tampering. *See Collier*, slip op., at 2.

In sum, the addition of new factual allegations surrounding the testimony of Bush and Griffin are not sufficient to distinguish the claims from his earlier claims in that Jackson's new allegations are conclusory, involve matters that were known or could have been discovered at the time of trial, and otherwise fail to establish that material evidence had been withheld by the prosecution in violation of *Brady*. Affidavits from Bush and Griffin fail to create a reasonable probability that the new allegations contained therein are meritorious such that issuance of the writ is warranted. *Howard*, 2012 Ark. 177, at 5, 403 S.W.3d at 43. Jackson's reconfigured claims with respect to the testimony of Bush and Griffin represent an abuse of the writ.

In this latest petition, Jackson raises one new claim as grounds for coram nobis relief that is based on allegations of prosecutorial misconduct and the suppression of exculpatory evidence provided to investigators by Bush's girlfriend, Renita Pennington. In support of

this claim, Jackson attaches an affidavit from Pennington wherein she states that Bush told her that he and Marcus Hunter were involved in a shooting of a man that she could not identify, and that Bush further told her that he did not know if Marcus had killed the man, but that the word was that Jackson was the killer. Pennington further avers that the prosecutor advised Pennington to leave town rather than appear and testify truthfully.

Pennington's assertion that Marcus Hunter was involved in the crime is not a fact that was extrinsic to the record. Bush testified at trial that on the day of the murder, he and Jackson were being driven around by "Little Mark," whom Bush identified in his affidavit as Marcus Hunter. According to Bush's trial testimony, when Jackson spotted Raynor in his front yard, Jackson told Little Mark to park in a nearby alley where Jackson and Bush exited the car, shot and killed Raynor, and ran back to the car being driven by Little Mark. *Jackson*, 359 Ark. at 299, 197 S.W.3d at 470. Thus, evidence that Marcus Hunter or Little Mark was involved in the shooting was presented at trial, and Pennington's affidavit, executed over fifteen years after trial, does not unequivocally contradict Bush's testimony that Little Mark took part in the crime.

Furthermore, Pennington's assertion that she failed to testify at the behest of the prosecutor is contradicted by a motion signed and filed by the prosecutor, which Jackson has also attached to his petition. The prosecutor's motion to show cause asked the trial court to hold Pennington in contempt for failing to appear pursuant to a witness subpoena. Jackson is asking this court to accept Pennington's allegations as credible and assume that the prosecutor filed a witness subpoena and a motion to show cause as a ruse.

As stated above, we do not accept allegations of a coram nobis petitioner at face value but examine the reasonableness of those allegations. *Howard,* 2012 Ark. 177, at 5, 403 S.W.3d at 43 Thus, we will not credit allegations that are set forth in an affidavit executed years after the trial to discredit sworn trial testimony or formal pleadings and subpoenas filed by a prosecutor. It is Jackson's burden to show that a writ of error coram nobis is warranted. This burden is a heavy one, for a writ of error coram nobis is an extraordinarily rare remedy. *Id*. at 4, 403 S.W.3d at 42. Jackson's conclusory allegations supported by long-delayed dubious affidavits are insufficient to meet Jackson's burden of demonstrating meritorious grounds for the writ. *Id*.

Jackson has filed a pro se motion to supplement his petition and a pro se motion to add to the supplement of the petition wherein he expands on his arguments and makes additional fact allegations. Jackson's pro-se motion to supplement his petition merely augments his arguments that the prosecutor committed a *Brady* violation. However, Jackson's supplemental arguments fail to provide convincing authority that his *Brady* claims entitle him to coram nobis relief.

In his pro se motion to add to the motion to supplement the petition, Jackson additionally contends that the evidence adduced at trial supports the affidavit of Bush recanting his trial testimony. Specifically, Jackson asserts that the testimony of Augusta Mitchell who had witnessed the murder testified that the two assailants were shorter than she was and that Mitchell testified that she was five feet nine inches tall. Jackson also asserts that testimony from the medical examiner established that the victim was five feet, eleven inches tall, and the fatal gunshot to the victim's head was fired by an assailant who was

shorter than the victim. Jackson contends that because he is over six feet tall, this testimony establishes that he was not the perpetrator of the crime. Jackson further insists that other evidence adduced at his trial bolstered Bush's recent affidavit including the following: that a .40 caliber weapon identified in Bush's trial testimony as the weapon fired by Jackson was proved not to have fired the fatal shot; that a .357 gun found in the possession of Roderick Pennington and Darrick Morgan was the actual murder weapon; that the prosecutor objected to the admission of testimony from Detective Marquez that a .357 caliber weapon was found in the possession of Roderick Pennington and Darrick Morgan shortly after the crime had been committed; and that the prosecutor dismissed felony charges against Griffin, and Markevius King[6] at the time they gave testimony to a grand jury incriminating Jackson in the crime.

A review of the trial record demonstrates that the evidence cited by Jackson in his pro se motion to add to his motion to supplement his coram nobis petition was presented at trial and considered by the jury.[7] Jackson's attempt to indirectly challenge the sufficiency of the evidence by contending the evidence presented at trial bolstered the affidavit of Bush

---

[6] At Jackson's trial, King testified that he could not remember the testimony he had provided to the grand jury.

[7] The height of the victim was raised at trial and the medical examiner testified that it was possible that the assailant was shorter than the victim, but that the trajectory of the fatal shot could also be attributed to other factors. In any event, evidence was presented that Jackson's gun, a .40 caliber semi-automatic weapon, had not fired the fatal shot, but that the fatal gunshot to the victim's head came from a revolver which had been fired by a caliber of weapon that may have included a .357 magnum revolver. Moreover, despite the objection of the prosecutor, the defense presented evidence that a .357 caliber weapon had been found in the possession of Roderick Pennington and Darrick Morgan.

fails to state a claim for coram nobis relief. Allegations that could be considered claims that the evidence was insufficient to sustain the judgment, or that challenge the credibility of witnesses are issues to be addressed at trial, and, when appropriate, on the record on direct appeal. *Howard*, 2012 Ark. 177, at 21, 403 S.W.3d at 51. As stated above, the evidence cited by Jackson was known at the time of his trial and presented to the jury who concluded that Jackson was guilty. *Id*. at 20, 403 S.W.3d at 50.

Again, the function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Nelson*, 2014 Ark. 91, at 3, 431 S.W.3d at 854. Jackson has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Id*. Jackson's additional fact allegations contained in his pro se motion to add to the motion to supplement the petition fails to meet this burden.

Petition to reinvest jurisdiction in the trial court denied; motion to supplement the petition and motion to add to motion to supplement the petition denied; motions to dismiss respondent's untimely response, for remand to the trial court for an evidentiary hearing, to supplement motion to remand to the trial court for an evidentiary hearing, and motion for appointment of counsel moot.