# SUPREME COURT OF ARKANSAS.

No. CR–14–257

| | |
|---|---|
| CHRISTOPHER GRADY<br><br>PETITIONER<br><br>V.<br><br>STATE OF ARKANSAS<br><br>RESPONDENT | **Opinion Delivered** September 14, 2017<br><br>PRO SE PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS AND MOTIONS FOR APPOINTMENT OF COUNSEL, TO PROCEED IN FORMA PAUPERIS, AND FOR DISCOVERY [JACKSON COUNTY CIRCUIT COURT, NO. 34CR-12-116]<br><br>PETITION DENIED; MOTIONS MOOT. |

**ROBIN F. WYNNE, Associate Justice**

Petitioner Christopher Grady, who was found guilty by a jury in 2013 of unlawful use of a communication device and delivery of a controlled substance, asks this court to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis in the case.[1] He has also filed a "motion for discovery" in which he seeks disclosure by the State of a variety of information before an evidentiary hearing is held in the trial court on his coram nobis petition and motions for appointment of counsel and to proceed in forma

---

[1] Rather than set out his grounds for coram nobis relief in the petition to this court, Grady has appended to the petition filed here the petition he desires to file in the trial court containing his grounds for relief. In the interest of judicial economy, we consider the petition intended for the trial court as part of the petition for coram nobis relief that is before us.

pauperis. Because Grady has not stated a ground for the writ, the petition is denied. The motions are rendered moot by the denial of the petition.

The Arkansas Court of Appeals affirmed the judgment in the case. *Grady v. State*, 2015 Ark. App. 49. The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Green v. State*, 2016 Ark. 386, 502 S.W.3d 524; *Westerman v. State*, 2015 Ark. 69, 456 S.W.3d 374; *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts*, 2013 Ark. 56, 425 S.W.3d 771.

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38. We are not required to accept the allegations in a

2

petition for writ of error coram nobis at face value. *Green*, 2016 Ark. 386, at 9, 502 S.W.3d 524, 530.

Grady, who was arrested in 2012 for offenses that occurred in October 2009, contends that the writ should issue in his case because the State suppressed exculpatory evidence at the time of his trial. The wrongful withholding of material exculpatory evidence from the defense is a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and a ground for granting the writ. *Isom v. State*, 2015 Ark. 225, 462 S.W.3d 662. The rule set out in *Brady* also encompasses evidence known only to police investigators and not to the prosecutor. *Howard*, 2012 Ark. 177, at 10, 403 S.W.3d at 45.

The United States Supreme Court held in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. In *Strickler v. Greene*, 527 U.S. 263 (1999), the Court revisited *Brady* and declared that evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). There are three elements of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *Strickler*, 527 U.S. 263; *Isom*, 2015 Ark. 225, at 2, 462 S.W.3d at 663.

Grady's *Brady* claim pertains to a negotiated guilty-plea agreement that Grady alleges existed before October 2009 between DeAngelo Denton and the Jackson County Sheriff and the Department of Drug Enforcement (DEA). Grady contends that the agreement required Denton, who testified for the State at Grady's trial, to become a confidential informant concerning persons selling cocaine in Jackson County in exchange for the State's agreement to drop charges against Denton for burglary. He alleges that Denton could have been sentenced to up to eighty years' imprisonment if convicted of the burglary charge, but he was allowed under the agreement to plead guilty to being a felon in possession of a firearm for which a sentence of ten years was imposed. Grady asserts that he did not learn of the agreement until 2014 when a discovery motion was filed at his cousin's trial "arising from the same incident."

Grady argues that the State had an obligation under *Brady* to inform his defense of the agreement at the time of Grady's 2013 trial because knowledge of it would have allowed his defense to discredit Denton and impeach his testimony about buying cocaine from Grady in October 2009. He asserts that knowledge of the agreement would have been particularly advantageous to the defense because Denton's testimony was the only evidence at his trial that directly implicated him in the 2009 drug sale.

We first note that Grady has offered no factual support for his allegation that there was an agreement between Denton and the State at the time of Grady's trial; or, even if there was such an agreement, that it was concealed from Grady's defense in violation of *Brady*. The burden is on the petitioner in an application for coram nobis relief to make a

full disclosure of specific facts that substantiate the merit of a *Brady* claim. *Howard*, 2012 Ark. 177, at 19, 403 S.W.3d at 50. Grady has not met that burden.

Furthermore, when considering a *Brady* violation, we look at the significance of the evidence that was alleged to have been concealed from the defense weighed against the totality of the evidence to determine if the evidence at issue would have been such that it would have prevented rendition of the judgment had the information been available at the time of trial. *Green*, 2016 Ark. 386, 502 S.W.3d 524. We further consider the cumulative effect of the allegedly suppressed evidence to determine whether the evidence that was alleged to have been suppressed was material to the guilt or punishment of the defendant. *See Kyles v. Whitley*, 514 U.S. 419, 436–37 (1995).

Here, the record lodged on direct appeal reflects that an agent with the DEA testified that in 2009, the DEA was in the process of conducting an ongoing investigation of the sale of crack cocaine in Jackson County, Arkansas, that included the use of confidential informants. One of the informants was Denton, whom the agent knew to be a convicted felon. The agent testified that on October 21, 2009, Denton was instructed to make telephone calls to Grady to arrange a buy of a half ounce of crack cocaine, approximately fourteen grams, for $800 and that the calls were recorded in the agent's presence. The recording of the calls was introduced into evidence by the State. The agent rode with Denton to Grady's apartment where Denton was searched to be sure that he had no contraband or weapons. The agent testified that Denton, who was wearing concealed video and audio equipment, went inside the apartment, returned to the car, and reported that Grady only had approximately nine and one-half grams to sell. The agent instructed Denton

to return to the apartment and purchase that amount. Denton did so and returned to the car with 9.6 grams of cocaine that he had purchased, which was immediately weighed and tested to establish that it was cocaine. At that point, Denton was instructed to place another call to Grady and inform him that Denton still wanted to buy the additional four and one-half grams and was informed by Grady that it would take about thirty minutes to prepare that amount. The recording of that phone call was also played for the jury. The agent and Denton later returned to the apartment where Denton, after being searched, went inside and returned with approximately three and one-half grams of cocaine. When the video of the drug purchase was played for jury, Denton identified Grady as the man seen in the video weighing out the drug for sale.

Denton testified for the State that he was a convicted felon and that he worked for the DEA as an informant and had purchased cocaine from Grady. Denton also testified that he had no charges pending against him at the time of trial, but that he had been convicted of a crime after he bought the cocaine from Grady in 2009, had been in the penitentiary before the time when he acted as an informant against Grady, and had been using drugs in 2009. It was for the jury to consider the information placed before it concerning Denton's criminal history and the evidence adduced at trial to assess Denton's credibility as a witness. *See Jackson v. State*, 2017 Ark. 195, 520 S.W.3d 242. Furthermore, the issue of whether a particular witness was credible, is not, in and of itself, within the purview of a coram nobis proceeding. *See id.*

Grady argues in his petition that the alleged secret plea agreement between Denton and the State was of particular significance because the quality of the audio and video

recordings that were played for the jury was poor, and thus Denton's testimony on the drug transaction was crucial in the jury's decision to find him guilty. When the totality of the evidence is taken into account, however, including the information brought out pertaining to Denton's criminal history and drug use, and in view of the fact that Denton's testimony was fully corroborated by the testimony of the DEA agent, Grady has not established that there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the alleged plea agreement been disclosed at trial. *See Scott v. State*, 2017 Ark. 199, 520 S.W.3d 262.

It should be noted that, to the extent that Grady's assertion about the weakness of the evidence against him was intended as a claim that the evidence adduced at trial had been insufficient to sustain the judgment of conviction, the claim is not a ground for the writ. Challenges to the sufficiency of the evidence constitute a direct attack on the judgment and are not cognizable in a coram nobis proceeding. *Jackson*, 2017 Ark. 195, 520 S.W.3d 242 (holding that allegations that could be considered claims that the evidence was insufficient to sustain the judgment or that challenge the credibility of witnesses are issues to be addressed at trial, and, when appropriate, on the record on direct appeal).

Petition denied; motions moot.