Cite as 2020 Ark. 233

# SUPREME COURT OF ARKANSAS

No. CR-15-539

| | | |
|---|---|---|
| TRENCIE OLIVER | | Opinion Delivered JUNE 11, 2020 |
| | PETITIONER | |
| | | |
| V. | | PRO SE PETITION TO REINVEST |
| | | JURISDICTION IN THE TRIAL COURT |
| STATE OF ARKANSAS | | TO CONSIDER A PETITION FOR WRIT |
| | RESPONDENT | OF ERROR CORAM NOBIS [PULASKI |
| | | COUNTY CIRCUIT COURT, FOURTH |
| | | DIVISION, NO. 60CR-14-1889] |
| | | |
| | | PETITION DENIED. |

JOHN DAN KEMP, Chief Justice

Petitioner Trencie Oliver brings this petition to reinvest jurisdiction in the trial court to file a petition for writ of error coram nobis in his criminal case. In the petition, Oliver contends the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding fingerprint evidence. Because we find that Oliver has not established a *Brady* violation as grounds for issuance of the writ, the petition is denied.

## I. *Facts*

The Pulaski County Circuit Court convicted Oliver of second-degree unlawful discharge of a firearm from a vehicle and possession of firearms by certain persons, and he was sentenced as a habitual offender to an aggregate term of 360 months' imprisonment. Oliver's conviction and sentence were affirmed by the Arkansas Court of Appeals. *Oliver v.*

*State*, 2016 Ark. App. 332, 498 S.W.3d 320. Oliver was arrested and charged with the crimes for which he was convicted after a police officer observed the driver of a vehicle discharge a firearm. *Id.* The arresting officer testified that Oliver was the driver, and Gregory Oliver was a passenger in the vehicle. *Id.* On appeal, Oliver argued it was Gregory who had possessed and discharged the firearm. Oliver further contended that his right to due process was violated when the police officers acted in bad faith by tainting and destroying evidence and preventing appropriate fingerprint testing on the gun that was fired from the vehicle. *Id.* In its opinion, the court of appeals noted that at trial, there was testimony that several police officers at the scene had handled the gun, the live rounds, and the shell casings without wearing gloves and that subsequent fingerprint testing was inconclusive in that no latent prints could be obtained by the fingerprint examiner. *Id.* The court of appeals rejected Oliver's argument regarding the destruction of the fingerprint evidence, finding that it had not been sufficiently raised at trial. *Id.*

Oliver now raises a *Brady* claim and asserts that the State withheld evidence regarding the fingerprint testing and the absence of latent prints on the gun, the casings, and the bullets.

## II. *Nature of the Writ*

The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*,

341 Ark. 397, 17 S.W.3d 87 (2000). Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Green v. State*, 2016 Ark. 386, 502 S.W.3d 524. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

III. *Grounds for the Writ*

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999). A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38. The burden is on the petitioner in the application for coram nobis relief to make a full disclosure of specific facts relied upon and not to merely state conclusions as to the nature of such facts. *McCullough v. State*, 2017 Ark. 292, 528 S.W.3d 833.

While allegations of a *Brady* violation fall within one of the four categories of fundamental error that this court has recognized in coram nobis proceedings, the fact that a petitioner alleges a *Brady* violation alone is not a sufficient basis for error coram nobis

3

relief. *Jackson v. State*, 2017 Ark. 195, 520 S.W.3d 242. To merit relief on a claim of a *Brady* violation, a petitioner must demonstrate that there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed at trial. *Id.* There are three elements of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *Carner v. State*, 2018 Ark. 20, 535 S.W.3d 634. Before the court can determine whether a *Brady* violation has occurred, the petitioner must first establish that the material was available to the State prior to trial and that the defense did not have it. *Id.*

## IV. *Grounds for Relief*

Although Oliver's allegations are unclear, he appears to claim that photographs of the fingerprints were taken and withheld from the defense. In support of his contention, Oliver attaches a document from the crime-scene search unit that described the tests for fingerprints on the revolver, the spent casings, and the live rounds and concluded that there were no latent fingerprints on those objects. There is nothing in this document to indicate that photographs were taken of the nonexistent latent fingerprints.

When a petitioner alleges a *Brady* violation as the basis for his or her claim of relief in coram nobis proceedings, the facts alleged in the petition must establish that there was evidence withheld that was both material and prejudicial such as to have prevented rendition of the judgment had it been known at the time of trial. *Martinez-Marmol*, 2018

4

Ark. 145, 544 S.W.3d 49. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.*

Oliver has not shown that the fingerprint tests were withheld by the State in that the issue pertaining to the inadvertent destruction of fingerprint evidence was raised by the defense at trial and on appeal. Moreover, the forensic examiner's conclusion that no latent fingerprints were identified on the revolver and other items was not material evidence such that it would have changed the outcome of the trial because the arresting officer testified that he saw the vehicle's driver put his left arm out of the vehicle and fire three rounds into the air. The officer further testified that when he pulled the vehicle over, Oliver—not Gregory—exited from the driver's side. In sum, Oliver has failed to demonstrate that the State withheld material evidence.

Petition denied.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I would grant Trencie Oliver's petition to reinvest jurisdiction and grant an evidentiary hearing. Oliver's case was sabotaged by the Little Rock Police Department's mishandling of key physical evidence and by its misrepresentation of its capability to perform forensic testing.

While Oliver argues in his petition that there was a *Brady* violation related to the handling of the evidence, the legal underpinnings of his case are controlled by our holdings in *Pitts v. State*, 2016 Ark. 345, 501 S.W.3d 803, and *Strawhacker v. State*, 2016

5

Ark. 348, 500 S.W.3d 716. Furthermore, the facts of this case and the sentence imposed clearly evidence that justice demands that Oliver be appointed counsel in order to assist in this matter.

I am mindful that the writ of error coram nobis is allowed only under compelling circumstances to achieve justice to address errors of the most fundamental nature. *Strawhacker*, 2016 Ark. 348, at 4 (citing *Sanders v. State*, 374 Ark. 70, 285 S.W.3d 630 (2008)). "In simple terms, this writ is a legal procedure to fill a gap in the legal system-to provide relief that was not available at trial because a fact exists which was not known at that time and relief is not available on appeal because it is not in the record." *Id.* (citing *Penn v. State*, 282 Ark. 571, 573–74, 670 S.W.2d 426, 428 (1984)).

Permission will be granted by this court for a petitioner to proceed in the trial court with a petition for writ of error coram nobis only when it appears that the proposed attack on the judgment is meritorious. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38. In making such a determination, we look to the reasonableness of the allegations of the petition and to the existence of the probability of the truth. *Id*.

Prior to trial, Oliver's attorney filed a motion for fingerprint testing of the firearm, empty shell casings, and ammunition. A continuance was requested because it had not been addressed by the State. The motion specifically stated that the evidence "be submitted to the Arkansas State Crime Lab to be examined for fingerprints and that if any are found, that those prints be compared to the Defendant's fingerprints and to those of George

Oliver." The trial court granted the motion. However, it only directed the fingerprints be sent to the Little Rock Police Department.

As requested, the motion specifically stated that testing was to be completed by the Arkansas State Crime Lab. However, there is nothing in the record to indicate that any testing was conducted by the Arkansas State Crime Lab. If we presume that testing occurred, there is nothing in the record, including the trial transcript, that would indicate that any results of that testing were provided to Oliver. The record does not include a report from the state crime lab. The only test results that the State provided to Oliver were the results of the testing conducted by the Little Rock Crime Scene Search Unit.

The results of the officers' testing appeared in a document entitled "crime scene search unit-evidence processed form."[1] It only states "negative results." This form describes the chain of custody and only includes the sentence indicating that the testing led to negative fingerprint results of the weapon, shell casings, and remaining ammunition. Lack of scientific testing by the Arkansas State Crime Lab establishes the ambiguity of the crime-scene report, and it can only be assumed that--to the extent that any testing occurred by the laboratory--the results were negative and excluded Oliver's fingerprints from the weapon, ammunition, and spent casings. Furthermore, the report from the officers is not responsive to the discovery requested by the defendant. Thus, the law presumes that the State's evidence, if obtained, would be considered favorable to Oliver. Likewise, if the

---

[1]This form is indicated to be LRPD Form 5480-41. Rev. 7/15/04.

7

prosecution failed to obtain crime-lab testing as ordered by the court, such failure, when viewed in light of its excuse of the gross mishandling, undercuts any claim that fingerprints were not available on the crime-scene evidence. The State's failure to disclose the crime lab's finding establishes the police officers' disregard for the court's order and thus can support an inference of willful suppression of evidence.

On appeal, the State improperly argues the lack of identifiable fingerprints because the lack of any fingerprints was due to the mishandling of evidence by the State. While the State claims that four officers mishandled the evidence, such a claim is self-serving as it is not supported by the state crime-lab report. Clearly, once again, one could argue that this failure is evidence of bad faith. Similar to *Pitts* and *Strawhacker*, the mishandling and mischaracterization of evidence violates the principles set forth by this court. The State cannot avoid a court order and make up an excuse to justify its failure to do so. As we have established in *Pitts* and *Strawhacker*, there are repercussions for such actions.

Likewise, the Little Rock Police Department misrepresents its capability of performing the gun-shot-residue test. Oliver requested the gun-shot-residue test at the time of his arrest, and Sgt. Andre Dyer told Oliver that he did not pursue that test because that is not his field of expertise. At trial, Detective Pasman testified he did not have access to a gun-shot-residue test and that only a homicide detective would have access to that test. No request was made to conduct the residue test. Law enforcement had to be acutely aware that this test could have provided dispositive proof whether it was Oliver, in fact, who fired

the weapon. Refusing to pursue this forensic testing gives rise to the conclusion that it would have exonerated Oliver.

Oliver received a presumptive sentence of three and a half years for the unlawful discharge of a firearm from a vehicle (he fired into space--into the air with no possibility of any damage to person(s) or property--a Class B felony), the remainder of his sentence was an enhancement from the Habitual Offenders Act, which added another 20 years, to run consecutively. Oliver's last felony conviction was in 2003. The legislative increase of time to be served for this offense is seven times more than that established by the court. In 1997 Oliver was sentenced to 18 months for felony possession of a controlled substance with intent to deliver. In 2003, he was sentenced to 8 years for domestic battery and first-degree terroristic threatening. Oliver served his time and completed those sentences more than 12 years ago, and now he is being sentenced to an additional 20 years for his past crimes. This sentence is disproportionate to the offense committed, and it suggests a systemic and unconstitutional denial of justice of such magnitude as to require a remand to the trial court for a hearing to develop the facts supporting not only the changed offense but also the basis for the extraordinary sentence imposed by the trial court. I dissent.

*Trencie Oliver*, pro se petitioner.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for respondent.