Cite as 2021 Ark. 190

# SUPREME COURT OF ARKANSAS

No. CR-90-247

| | |
|---|---|
| MICHAEL WAYNE WILLIAMS<br><br>PETITIONER<br><br>V.<br><br>STATE OF ARKANSAS<br><br>RESPONDENT | **Opinion Delivered:** October 28, 2021<br><br>PRO SE SECOND PETITION AND AMENDED SECOND PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS<br>[PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION, NO. 60CR-89-2201]<br><br><br>PETITION AND AMENDED PETITION DENIED. |

**KAREN R. BAKER, Associate Justice**

Petitioner Michael Wayne Williams was convicted of first-degree murder, kidnapping, and aggravated assault for which he was sentenced to life, twenty years, and six years, respectively, to run consecutively. Williams appealed his convictions and sentences, and this court affirmed. *Williams v. State*, 304 Ark. 509, 804 S.W.2d 346 (1991). Williams now brings a pro se second petition and an amended second petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis in which he contends that the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Because Williams's claim does not establish a ground for issuance of the writ, we deny the petitions.

I. *Background*

On August 13, 1989, Williams went to the home of Virginia McGee, the victim, looking for his ex-girlfriend, Robin Jefferson. On that night, Jefferson was staying with her grandmother, and McGee was at home with her boyfriend, Willis Stewart. *Williams*, 304 Ark. 509, 804 S.W.2d 346.[1] Stewart testified that he and McGee had fallen asleep but awoke to find Williams in their doorway, holding a gun. *Id.* As Williams was asking about Jefferson's whereabouts, McGee got up and told Williams to leave at which time she and Williams walked down the hallway. *Id.* Stewart stated that he heard the screen door close, and as McGee was walking back down the hall, Stewart heard gunshots. *Id.* Williams then ran back into the house and into the bedroom, asking where Jefferson was. Williams then fled. *Id.*

Captain Randy Johnson of the North Little Rock Police Department testified that he conducted an interview with Williams and that Williams told him and Sergeant Jim Chapman that he went to McGee's home armed with a handgun. *Id.* After McGee escorted Williams to the door, telling him to leave, McGee started to walk across the living room to the hallway, at which time Williams raised his gun and fired two shots. *Id.* Dr. Fahmy Malak, the chief medical examiner with the Arkansas State Crime Laboratory, confirmed that McGee had been shot once in the abdomen and once in the lower back and that evidence reflected that she had been shot with a .45-caliber weapon. *Id.*

---

[1]This court may take judicial notice in postconviction proceedings of the record on direct appeal without need to supplement the record. *Williams v. State*, 2019 Ark. 289, 586 S.W.3d 148.

On direct appeal, Williams argued that the shots had been fired in frustration and that he did not intend to kill McGee. This court determined that it was irrelevant that Williams's initial quarrel was with Jefferson when he arrived at the house and that the jury could reasonably have found that Williams became so upset with McGee that he raised his gun and fired, purposely intending to kill McGee. *Id.*

Williams subsequently sought relief by filing a pro se petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis. After obtaining a copy of McGee's autopsy report, Williams claimed that the medical examiner gave false testimony that both wounds had gunpowder residue, and the fact that there was no residue in one of the wounds was withheld by the prosecution in violation of *Brady*. *Williams v. State*, 2011 Ark. 541 (per curiam). This court determined that Williams failed to claim that either the report or its findings were, in fact, withheld and unavailable to the defense and that any inconsistency between the medical examiner's testimony and the report was subject to cross-examination. *Id.* Moreover, at least one of McGee's wounds contained gunpowder residue, indicating Williams was close to McGee when he fired the gun and thus had failed to demonstrate a reasonable probability that the judgment of conviction would not have been rendered had the information at issue been disclosed at trial. *Id.* Williams now seeks relief in a pro se second petition and an amended second petition to reinvest jurisdiction in the trial court.

II. *Nature of the Writ*

The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Green v. State*, 2016 Ark. 386, 502 S.W.3d 524. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771. We are not required to accept the allegations in a petition for writ of error coram nobis at face value. *Jackson v. State*, 2017 Ark. 195, 520 S.W.3d 242.

### III. *Grounds for the Writ*

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38.

### IV. *Claims for Issuance of the Writ*

4

To merit relief on a claim of a *Brady* violation, a petitioner must demonstrate that there is a reasonable probability that the judgment of conviction would not have been rendered or would have been prevented had the information been disclosed. *Jackson*, 2017 Ark. 195, 520 S.W.3d 242. There are three elements to a *Brady* violation: (1) the evidence at issue must be favorable to the accused either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *Carner v. State*, 2018 Ark. 20, 535 S.W.3d 634. Before the court can determine whether a *Brady* violation has occurred, the petitioner must first establish that the material was available to the State prior to trial and that the defense did not have it. *Id.*

Williams contends that he obtained documents from the Arkansas State Crime Laboratory that indicate prosecutorial misconduct based on exculpatory and impeaching evidence that was withheld by the State and that is extrinsic to the record. Williams claims that he did not receive any documents from the prosecutor at the time of trial indicating that there had been no testing on the shell casings and bullets and that he had to seek the documents himself, which is a violation of *Brady* because he could have impeached and cross-examined witnesses about the lack of testing. Williams further claims that Sergeant Chapman testified that he collected .45-caliber casings and bullets from the crime scene, Stewart testified that Williams was seen with a .45-caliber weapon, and Dr. Malak testified that the wounds were caused by a large caliber weapon consistent with a .45-caliber bullet, but that no examiner from the Arkansas State Crime Laboratory made findings to confirm

that the bullets and casings were from a .45-caliber weapon or that they could be linked to him. Williams's claims do not merit issuance of the writ.

Although Williams contends that crime-lab documents were withheld, he also contends that crime-lab testing was withheld. Williams concedes that the shells casings and bullets were admitted into evidence but claims that he would have been exonerated had the jury known of the lack of testing because the State would have failed to link him to McGee's murder. Williams's allegation is not within the purview of the writ because the thoroughness of the State's investigation of the evidence adduced in the petitioner's trial and the strength of the State's case against the accused, either in general or with respect to a certain aspect, are matters to be addressed at trial. *See McKinney v. State*, 2020 Ark. 113, 594 S.W.3d 879. Claims that challenge the sufficiency of the evidence are not cognizable in a petition for the writ of error coram nobis. *Id.* Furthermore, notwithstanding his claim to the contrary, when Williams gave a statement to Captain Johnson, he admitted raising the gun and firing two shots.[2] *Williams*, 304 Ark. at 513, 804 S.W.2d at 347. The defense was clearly aware at the time of trial that Williams's possession of the gun and his firing the gun could be at issue, and questions pertaining to the shell casings and bullets could have been settled at the time of trial. It is axiomatic that a coram nobis action does not provide the petitioner with a means to retry his or her case. *Carner*, 2018 Ark. 20, 535 S.W.3d 634.

---

[2]Williams admitted to this court on appeal that he had fired the shots, and his only denial was the requisite intent to commit first-degree murder. *Williams*, 304 Ark. at 513, 804 S.W.2d at 348 (Williams argued that the shots were fired but that the evidence did not show he intended to kill McGee.).

Petition and amended petition denied.

*Michael Wayne Williams*, pro se petitioner.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for respondent.